THE O'MARA LAW FIRM, P.C.
DAVID C. O'MARA, ESQ. (NEVADA BAR NO. 8599)
311 East Liberty St.
Reno, Nevada 89501
775-323-1321
775-323-4082 (fax)
david@omaralaw.net

*Attorney for Plaintiffs*

*(Additional counsel on signature page)*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARLOTTE BOWNES; JOSEPH LAGRECA; JESSICA NAUMANN; and FERMIN OROPEZA PALACIOS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> IGT; MGM GRAND DETROIT LLC; BLUE TARP REDEVELOPMENT, LLC; UTGR, LLC; NP PALACE LLC; COAST HOTELS AND CASINOS, INC.; THE CANNERY HOTEL AND CASINO, LLC, <br><br> Defendants. | Case No. 3:24-cv-00528-ART-CSD <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO STAY DISCOVERY** |

## INTRODUCTION

In this putative class action, Plaintiffs bring suit against Defendants for their allegedly deceptive and misleading design, promotion, and operation of "Wheel of Fortune"-themed electronic gaming devices. Defendants operate lucrative businesses either manufacturing these gaming devices or selling access to them on casino floors. Plaintiffs were falsely induced to spend money on those machines by the rigged operation of their signature feature.

Defendants' motion to stay discovery, *see* ECF No. 42 (the "Motion"), should be denied. Defendants cannot meet the standard for obtaining a stay under *Kor Media Group, LLC v. Green*, 294 F.R.D. 579 (D. Nev. 2013) (citing *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597 (D. Nev. 2011)). Nor do the circumstances warrant the Court's use of its inherent authority to issue a stay.

Plaintiffs' claims are meritorious and well-pled in the First Amended Complaint (the "FAC"). *See generally* FAC, ECF No. 30; *see also* ECF No. 45 (Opp. to Mot. to Dismiss). They are entitled to an expeditious adjudication of the claims. *See* Fed. R. Civ. P. 1 (providing for the "just, speedy, and inexpensive determination of every action and proceeding"). Defendants' Motion should be denied. This case should proceed to discovery.

## BACKGROUND

As alleged in the First Amended Complaint, the "Wheel of Fortune" is one of the most successful electronic gaming devices ever developed. FAC, ¶ 41. These devices appear in casinos throughout the country and are available to play upon payment of consideration. *Id*. at ¶¶ 22, 25, 26. "Wheel of Fortune" devices have a "signature feature"—a large, brightly colored, spinning wheel which is affixed to the top of the slot machines (the "Bonus Wheel Feature"). *Id*.; *see also id*. at ¶¶ 39, 55 (picturing the Bonus Wheel Feature). When a player wins a spin of the Bonus Wheel Feature, the wheel begins rotating and stops on an indicator pointing to a segment displaying an additional monetary amount won by the player. *Id*. at ¶ 25.

Defendant IGT designs, manufactures, markets, sells, and distributes the "Wheel of Fortune" gaming devices. *Id*. at ¶ 8. The remaining Defendants operate resorts and casinos where the "Wheel of Fortune" devices are available to play on gaming floors (the "Casino Defendants").

*Id.* at ¶ 8. Plaintiffs allege that they paid to play "Wheel of Fortune" devices on casino floors operated by at least one of the Casino Defendants. *Id.* at ¶¶ 63-82.

Defendants designed, marketed, promoted, and calibrated the "Bonus Wheel Feature" to appear as though it were a normal free-spinning mechanical wheel, e.g., a wheel which has an equal chance of landing on each of its segments." *Id.* at ¶¶ 31, 35, 38, 39, 53-55. However, the Bonus Wheel Feature is "electromechanically operated" and "linked to an internal computer that determines the segment of the wheel on which the wheel's indicator actually stops." *Id.* at ¶ 43. It "also contains a drive mechanism which gradually reduces the rate of spin of a mechanical wheel, which is designed to merely simulate the movement of a mechanical wheel." *Id.* The drive mechanism "is rigged and manipulated by the internal computer to stop far more frequently with the indicator pointing at segments with lower monetary amounts than at segments with higher monetary amounts." *Id.* These allegations are confirmed by the patent held by IGT for the Bonus Wheel Feature. *Id.* at ¶ 44.

Plaintiffs bring six causes of action to remedy this fraudulent scheme. They bring three federal RICO claims predicated on mail fraud and wire fraud violations, and state law claims for common law fraud, unjust enrichment, and negligent misrepresentation. *Id.* at ¶¶ 91-129. Defendants have moved to dismiss the claims, *see* ECF No. 40, and Plaintiffs have opposed that motion. *See* ECF No. 45.

On January 27, 2025, the Court entered a civil standing order in this action noting, in part, that:

> The filing of a motion to dismiss does not stay discovery. Rather, the parties are required to comply with the rules of discovery as required by the Local Rules and the Federal Rules of Civil Procedure. *See* LR 26-1 *et. seq.*; Fed. R. Civ. Pro. 26 *et. seq.* If a party believes that discovery should be stayed pending a decision on the motion to dismiss, the party is required to file a motion to stay that directly addresses the factors articulated in *Kor Media Group, LLC v. Green*, 294 F.R.D. 579 (D. Nev. 2013) (citing *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597 (D. Nev. 2011)). Parties are advised that a stay of discovery will not be granted merely because a motion to dismiss was filed. Rather, the moving party must establish that a stay is proper under the circumstances.

ECF No. 27. Defendants now move to stay discovery. *See generally* ECF No. 42. Following the filing of this Motion, on May 19, 2025, the Parties held a Rule 26(f) conference.

# ARGUMENT

Defendants' Motion should be denied. Defendants have not—and cannot—meet the three mandatory factors required for a stay of discovery articulated in *Kor Media Group*. *See* 294 F.R.D. at 581. As in *Kor Media Group*, Defendants cannot meet their burden on the third factor: whether a "preliminary peek" at a potentially dispositive motion leaves the Court "convinced that the plaintiff will be unable to state a claim." *See id*. On the contrary, Defendants' motion to dismiss falls flat. *See* ECF No. 45 (Opp. to Mot. to Dismiss). Nor have Defendants convincingly shown that the Court should use its inherent authority to stay discovery. *See* ECF No. 42 (Mot. to Stay Discovery). This case should proceed to discovery.

### I. Defendants Cannot Meet the *Kor Media Group* Factors Because A "Preliminary Peek" at the Motion to Dismiss Briefing Does Not Leave a Reader "Convinced" that the Motion Will Be Granted

Defendants cannot show that a stay of discovery is warranted pursuant to the *Kor Media Group* factors. Specifically, Defendants cannot meet the third factor, that a "preliminary peek" at the motion to dismiss and the related briefing leaves the Court "convinced that the plaintiff will be unable to state a claim." 294 F.R.D. at 581. Defendants' Motion should be denied.

As articulated in *Kor Media Group*, a movant seeking a stay of discovery in Nevada District Courts must meet three factors:

> (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a "preliminary peek" at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim for relief.

*See id*. Here, as in *Kor Media Group*, Defendants cannot meet the third factor. *See id*. Even a "preliminary peek" at the merits of the pending motion to dismiss papers, *see* ECF Nos. 40 & 45, reveals that Defendants are not likely to prevail on the motion. Much to the contrary, a "preliminary peek" suggests that Defendants' motion to dismiss will likely be denied.

The "preliminary peek" factor is "not easily met." *Kor Media Group*, 294 F.R.D. at 583. "Absent extraordinary circumstances, litigation should not be delayed simply because a non-frivolous motion has been filed." *Id*. (quoting *Trzaska v. Int'l Game Tech.*, No. 2:10-CV-02268-JCM, 2011 WL 1233298, at *4 (D. Nev. Mar. 29, 2011)). "Thus, for example, 'a stay might be

- 3 -

appropriate where the complaint was utterly frivolous, or filed merely for settlement value.'" *Id*. (quoting *Turner Broadcasting Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev.1997).

Defendants move to dismiss the FAC on two bases. First, they argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims. *See* ECF No. 40 at 4-8. Second, they contend that Plaintiffs have failed to state any cause of action. *See id*. at 8-21. Both arguments fail in light of the well-plead allegations of the FAC—and neither leaves a reader "convinced" pursuant to a "preliminary peek" that the motion will be granted, as required to stay discovery. *See Kor Media Group*, 294 F.R.D. at 581. Plaintiffs summarize their arguments against dismissal below.

1. <u>This Court Has Subject Matter Jurisdiction Over Plaintiffs' Claims</u>

As shown in Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss, this Court has subject matter jurisdiction over Plaintiffs' claims. *See* ECF No. 45. Defendants' arguments to the contrary are not persuasive. They are also contradicted by precedents binding on this Court.

Defendants' jurisdictional argument turns entirely on the contention that Plaintiffs seek recovery of a "gaming debt" under NRS § 463.361 and their claims are therefore subject to the Nevada Gaming Code's administrative exhaustion requirement. *See* ECF No. 40, 4-8. There are numerous fatal flaws in this argument, all of which are explained in Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss. *See* ECF No. 45. Plaintiffs summarize them below.

As a threshold matter, however, it is important to note that simply leveling a jurisdictional argument is not enough to fulfill the third *Kor Media Group* factor (despite Defendants' attempt to suggest otherwise). Defendants' jurisdictional argument must still meet the standard of leaving the Court "convinced" under a mere "preliminary peek" that the motion will be granted. *See, e.g.*, *Holiday Sys. Int'l of Nevada v. Vivarelli, Schwarz, & Assocs., S.A. de. C.V.*, No. 2:10-CV-00471-MMD, 2012 WL 3860824 (D. Nev. Sept. 5, 2012) (finding no abuse of discretion where a magistrate judge denied a stay of discovery sought solely on the basis of a motion challenging personal jurisdiction); *Bliss v. CoreCivic, Inc.*, No. 2:18-CV-01280-JAD-GWF, 2018 WL

8783789, at *4 (D. Nev. Nov. 21, 2018) (denying a motion to stay discovery where the movant argued that the court lacked personal jurisdiction over it); *Edwards v. Juan Martinez, Inc.*, No. 2:20-CV-00570-JAD-EJY, 2020 WL 5648319, at *2-6 (D. Nev. Sept. 22, 2020) (denying motion to stay discovery pending resolution of motion to dismiss for lack of personal jurisdiction); *see also Sou v. Bash*, No. 2:15-CV-698-APG-VCF, 2015 WL 7069297, at *2 (D. Nev. Nov. 10, 2015). Defendants' jurisdictional argument does not even come close to meeting this standard.

A highly analogous situation appeared in *Cuadros v. State Farm Fire & Cas. Co.*, No. 2:16-cv-2025-JCM-VCF, 2016 WL 6154902, at *1 (D. Nev. Oct. 20, 2016). In *Cuadros*, the defendant seeking a stay of discovery argued that the plaintiffs' claims were subject to the exclusive jurisdiction of the Nevada Department of Insurance. *Id*. The plaintiff responded that her tort and contract claims were not predicated on an interpretation of the insurance code, and that the insurance code's administrative exhaustion requirement therefore did not apply. *Id*. That is analogous to Defendants arguing here that the gaming code's administrative exhaustion require applies to Plaintiffs' claims sounding in fraud, unjust enrichment, and negligent misrepresentation. *See* ECF Nos. 45 & 45. Given the *Cuadros* court's "uncertainty" with respect to the administrative exhaustion argument on a "preliminary peek," it held that "[a] stay of discovery is unwarranted." *Id*. The very same result should hold here—especially in light of the crystal clear precedent showing that the gaming code's exhaustion requirement does not apply to Plaintiffs' claims.

A. *Plaintiffs Do Not Seek Recovery of a "Gaming Debt"*

First, the Nevada gaming statute's administrative exhaustion requirement does not apply to Plaintiffs' claims because they do not seek recovery of a "gaming debt" under NRS § 463.361. *See* ECF No. 45, 4-9. Indeed, Plaintiffs do not seek to collect any debt at all. Nor do they seek to enforce the outcome of any game. On the contrary, Plaintiffs seek to recover funds spent on "Wheel of Fortune"-themed gaming devices due to Defendants' fraudulent design, promotion, and

calibration of those machines. *See id.* at 5. Those types of claims may be brought in court in the first instance—as courts applying Nevada law have consistently held over many decades.

The term "gaming debt" is not defined in the Nevada gaming code, but it has often been construed by state and federal courts. In 1985, the Supreme Court of Nevada held that the essence of a gaming debt is that it arises from a game where "one player was to lose to the other." *Sigel v. McEvoy*, 707 P.2d 1145, 1146 (Nev. 1985). Thus, for example, "an unpaid slot machine jackpot is a gaming debt . . . ." *Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 695 (9th Cir. 1991). As are unpaid keno[1] winnings. *State Gaming Control Bd. v. Breen*, 99 Nev. 320, 323, 661 P.2d 1309, 1311 (1983). Only claims seeking to enforce the outcome of a game where "one player was to lose to the other" create an action for a "gaming debt." *See Sigel*, 707 P.2d at 1146.

Courts have also considered what is *not* a "gaming debt." In *Erickson*, the Ninth Circuit confirmed Nevada's longstanding rule that "one who lost money in a crooked gambling game could recover in a civil action." 942 F.2d at 695. In doing so, it looked to *Berman v. Riverside Casino Corporation*, where it revived fraud claims against a casino arising from allegations of loaded dice. 323 F.2d 977, 977-80 (9th Cir. 1963). It also drew on *Zaika v. Del E. Webb Corporation*, which involved an extra card in a blackjack deck. *Id.* at 696-97 (citing *Zaika*, 508 F. Supp. 1005, 1006 (D. Nev. 1981). In *Zaika*, this Court held that a "player who claims she has been cheated by a casino has two distinct remedies: she may pursue a hearing before the Gaming Control Board [] or she may bring a civil suit under Berman." *See id.* In sum, the Ninth Circuit has expressly held that claims to recover funds spent on a "crooked gambling game" are not subject to administrative exhaustion under NRS 463.361. *Erickson*, 942 F.2d at 695. That is precisely what Plaintiffs allege here. *See* FAC, ¶¶ 41-84.

---

[1] Keno is a lottery-like gambling game played at modern casinos.

Given this clear precedent in favor of Plaintiffs' position, Defendants cannot show that a "preliminary peek" at the merits leaves a reader "convinced" that the motion to dismiss will be granted. *See Kor Media Group*, 294 F.R.D. at 581. As a Hail Mary, Defendants argue that a 1995 amendment to the Nevada gaming statute changed the longstanding rule described in *Erickson*. *See* ECF No. 40 at 7-8. The 1995 amendment changed NRS 463.362 to encompass disputes involving "alleged losses" in addition to "alleged winnings." NRS 463.362(1)(b); S.B. 401 (Nev. 1995). However, a directly on-point decision from this Court following the 1995 amendment, *Toll v. Nevada Prop. 1, LLC*, No. 2:20-cv-00929, 2021 WL 5853587 (D. Nev. Dec. 9, 2021), confirmed the continuing force of the *Erickson* rule. In response to this authority, Defendants simply state in a footnote that they "disagree" with its holding. *See* ECF No. 40 at 8 n.8. That does not leave a reader "convinced" on a "preliminary peek" that the long, unbroken line of authority from *Berman* to *Toll* should be discarded by this Court. *See* ECF No. 45 at 4-5.

Because Plaintiffs do not seek to enforce any debt incurred through a game where "one player was to lose to the other," *see Sigel*, P.2d at 1146, and instead seek to recover funds spent on a "crooked gambling game," *see Erickson*, 942 F.2d at 695, they "may assert an action outside the administrative process to recover gambling losses sustained due to casino fraud." *Id*. at 697; *see also Toll*, 2021 WL 5853587 at *4. Defendants' argument that the Nevada gambling statute's administrative exhaustion requirement applies to Plaintiffs' claims is mistaken—and Defendants' motion to dismiss will likely be denied. Defendants' request for a stay of discovery in this matter should be denied. *See, e.g.*, *Erwine v. United States*, No. 3:24-CV-00045-MMD-CSD, 2024 WL 4029202, at *4 (D. Nev. Sept. 3, 2024) (denying a motion to stay discovery because the "court is not convinced the Tribal Defendants will succeed on their motion to dismiss on the basis that the court lacks subject matter jurisdiction.").

B. *Subject Matter Jurisdiction Over Plaintiffs' Federal Claims Cannot Be Defeated By Nevada's Administrative Exhaustion Requirement*

Second, Defendants leave the United States Constitution at the door by arguing that Nevada's administrative exhaustion requirement deprives this Court of subject matter jurisdiction

- 7 -

over federal causes of action. On the contrary—as is well and firmly established—states cannot limit federal courts' jurisdiction over federal claims. Only Congress can do that.

It is well established that "state administrative exhaustion requirements are not jurisdictional in federal court." *See, e.g.*, *Does 1-4 v. Butler Univ.*, 712 F. Supp. 3d 1154, 1157 (S.D. Ind. 2024). This is because "Congress alone defines the lower federal courts' subject-matter jurisdiction." *Odom v. Penske Truck Leasing Co., L.P.*, 893 F.3d 739, 742 (10th Cir. 2018). Pursuant to the Supremacy Clause of the United States Constitution, "state law cannot enlarge or contract federal jurisdiction." *Thompson v. Cope*, 900 F.3d 414, 425 (7th Cir. 2018); U.S. Const. art. 6, cl. 2.

Nevertheless, Defendants assert that this Court lacks subject matter jurisdiction over Plaintiffs' federal RICO claims. Defendants' only argument to this effect is that Plaintiffs purportedly failed to comply with Nevada's administrative exhaustion requirement. *See* ECF No. 40 at 4–8. But Nevada simply cannot create an administrative exhaustion requirement which deprives this court of subject matter jurisdiction over federal causes of action. *See, e.g.*, *Perkins v. Gregg Cnty., Texas*, No. 6:94 CV 328, 1995 WL 836051, at *2 n.5 (E.D. Tex. Dec. 6, 1995) ("federal claims . . . are not subject to state administrative exhaustion requirements."); *Tenn. Coal, Iron, & R.R. Co. v. George*, 233 U.S. 354, 360 (1914); U.S. Const. art. III, § 1.

Nor can Nevada's administrative exhaustion requirement be incorporated as a substantive element of Plaintiffs' federal RICO claims. Only Congress can define the elements of federal cause of action. *See AT & T Communications System v. Pacific Bell*, 203 F.3d 1183, 1184 (9th Cir. 2000) ("We hold that exhaustion is not required, because the structure of the federal statute shows that Congress did not intend to incorporate varying state exhaustion requirements into federal law as a prerequisite to federal court review."). Like the federal statute in *Pacific Bell*, nothing in the RICO Act indicates that Congress intended to incorporate state law administrative remedies. *See* 18 U.S.C. §§ 1961–1968; *see also Smith v. State of Indiana*, 904 F. Supp. 877, 878

(N.D. Ind. 1995); *Bernius v. Ochsner Med. Ctr.-N. Shore, L.L.C.*, No. CV 16-14730, 2016 WL 10586188, at *7 (E.D. La. Dec. 15, 2016); *Lockwood v. Our Lady of the Lake Hosp., Inc.*, No. CV 17-00509-SDD-EWD, 2018 WL 3451514, at *7 (M.D. La. July 17, 2018).

Thus, even if Plaintiffs' state law claims seek to recover a "gaming debt" within the meaning of NRS 463.361—which they do not—Plaintiffs' federal RICO claims cannot be dismissed based on Nevada's administrative exhaustion requirement. Defendants' motion to dismiss should be denied—and it certainly does not leave a reader "convinced" under a mere "preliminary peek" that it will be granted. *See Kor Media Group*, 294 F.R.D. at 581; *Hernandez v. Backgroundchecks.com, LLC*, No. 220-cv-01766, 2021 WL 1997253, at *1 (D. Nev. Apr. 6, 2021) ("Having conducted this preliminary peek, the Court is not convinced that Plaintiff will be unable to proceed with his claims in this Court. Rather, it appears possible (based on controlling Ninth Circuit caselaw) that this Court has personal jurisdiction over Defendant . . . .").

2. <u>Plaintiffs Have Stated a Claim for Each Cause of Action</u>

Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss explains in detail how the FAC states a claim for each cause of action. *See* ECF No. 45 at 10-24. Plaintiffs briefly summarize those arguments below. Taken together, they show that Defendants' motion to dismiss is not only unlikely to be granted—it will likely be denied. As a result, Defendants cannot show that a "preliminary peek" will leave the Court "convinced" that the motion will be granted. *See Kor Media Group*, 294 F.R.D. at 581; *see also Emhof v. Nationstar Mortg. LLC*, No. 214CV02134LDGGWF, 2016 WL 3625548, at *2 (D. Nev. July 6, 2016) (denying a motion to stay discovery where "the Court is not convinced to a certainty that Plaintiff cannot state a claim for relief against Defendant").

A. *Plaintiffs State RICO Claims Under 18 U.S.C. § 1962(a), (c) & (d)*

Plaintiffs have plausibly stated each of their federal RICO claims. *See* ECF No. 45 at 10-24. As a threshold matter, there is nothing special about RICO actions which justify imposition

- 9 -

of a lower burden on the movant with respect to a motion to stay discovery as compared to any other claim. *See, e.g.*, *Martinez v. MXI Corp.*, No. 315CV00243MMDVPC, 2015 WL 8328275, at *5 (D. Nev. Dec. 8, 2015) (denying a motion to stay discovery even where RICO claims appeared unlikely to move forward). In fact, the purported complexity of the RICO claims weighs in *favor* of commencing discovery immediately. *See Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, No. CV16-00614 BRO (ASX), 2016 WL 11783827, at *5 (C.D. Cal. Sept. 30, 2016) (denying a motion to stay discovery in a case involving RICO claims and noting that "[t]he RICO causes of action may require significant discovery; as such, the Court declines to stay discovery in order to avoid undue delay of the proceedings").

Substantively, several of Defendants' Rule 12(b)(6) arguments are generally applicable to the three RICO causes of action asserted in the FAC. Plaintiffs briefly address these arguments below, but also respectfully direct the Court to their Opposition to Defendants' Joint Motion to Dismiss for the complete briefing. *See* ECF No. 45. Even a cursory review, however, shows that Plaintiffs have plausibly stated their RICO claims.

**Racketeering Activity.** Defendants do not deny that Plaintiffs have shown racketeering. Nor could they with good reason. Courts have consistently found that the operation of rigged gambling devices constitutes racketeering activity. *See, e.g.*, *Hannosh v. Segal*, 235 Ariz. 108, 112–13 (Ct. App. 2014); *Adell v. Macon Cnty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1239–40 (M.D. Ala. 2011); *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 52 (E.D.N.Y. 2000); *Beychok v. Baffert*, 2024 WL 5112755, at *15–16 (W.D. Ky. Dec. 13, 2024).

**Conducting a RICO Enterprise.** Plaintiffs have alleged that Defendants conducted a RICO enterprise. "[T]o conduct or participate, directly or indirectly, in the conduct" of an enterprise, "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993). This does not require formal control—liability extends to those who help direct or carry out the enterprise's functions. *Id.* at 179. Moreover, a

- 10 -

plaintiff satisfies the "conduct" element if they allege the defendant "coordinat[es] and caus[es] the public dissemination of false, misleading or deceptive statements" in support of the RICO conspiracy. *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1, 877 (D.D.C. 2006).

The FAC easily meets this standard. Plaintiffs allege that IGT designed and programmed the Bonus Wheel Feature to appear random while ensuring it disproportionately awarded low-value prizes, *see* FAC ¶¶ 63–67, and that the Casino Defendants offered these machines knowing the falsity of their design, calibrated the machines to land less frequently on larger payouts, promoted the illusion of randomness, and omitted the truth. FAC ¶¶ 45, 79–83, 92–97, 108–114. These activities establish an association-in-fact with a common purpose, relationships among those associated with the enterprise, and the longevity necessary to accomplish the purpose. *See Boyle v. United States*, 556 U.S. 938, 944 (2009); ECF No. 45 at 12-15 (applying the association-in-fact elements to the allegations of the FAC).

**Pattern of Racketeering Activities.** A "'pattern of racketeering activity' consists of at least two acts of racketeering activity," such as mail or wire fraud, within a ten-month period. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987) (quoting 18 U.S.C. § 1961(5)). To establish such a pattern, Plaintiffs "must show that the acts are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Plaintiffs have properly pled multiple predicate "related and continuous" acts of "mail and wire fraud" by each Defendant "in furtherance of the fraudulent scheme. FAC ¶ 109.

Plaintiffs include specific examples demonstrating how Defendants transmitted advertisements, in-game displays, marketing materials, and other fraudulent communications via interstate mail and wire, constituting predicate acts under 18 U.S.C. §§ 1341 and 1343. *See, e.g.*, FAC ¶¶ 40, 51, 53, 54, 55, 56, 57–63, 100, 104, 106, 107, 115. Accordingly, Plaintiffs have pleaded specific predicate acts. *See, e.g., Does 1–60 v. Republic Health Corp.*, 669 F. Supp. 1511,

- 11 -

1516 (D. Nev. 1987) (fraudulent scheme involving misrepresentations to patients and the public survived dismissal); *Stewart v. Fairley*, No. CIV 13-1502-PHX-MHB, 2014 WL 12538164, at *3–4 (D. Ariz. June 4, 2014) (denying motion to dismiss where plaintiff alleged deceptive business practices and misrepresentation in a fraud-based RICO claim); *Pecot v. SF Deputy Sheriff's Ass'n*, 2009 WL 585877, at *2–3 (N.D. Cal. Mar. 6, 2009) (similar). Moreover, courts have found relatedness where different media is used to effectuate the predicate acts, so long as the goal remains consistent. *See, e.g.*, *Stewart*, 2014 WL 12538164, at *4; *Navajo Health Found. - Sage Mem'l Hosp., Inc. v. Razaghi Dev. Co., LLC*, No. 219-CV-00329-GMN-EJY, 2022 WL 960109, at *9 (D. Nev. Mar. 30, 2022); *Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1046–47 (N.D. Cal. 2015) ("[t]he relatedness requirement to establish a 'pattern' of racketeering activity is not a high threshold.").

Plaintiffs also adequately allege ongoing criminal conduct. The continuity requirement may be satisfied either by (1) a closed period of repeated conduct, or (2) past conduct that by its nature projects into the future with a threat of repetition. *H.J. Inc.*, 492 U.S. at 241. Plaintiffs have adequately pled both throughout the two-decade racketeering enterprise. *See, e.g.*, FAC ¶¶ 40, 51, 53, 54, 55, 56, 57–63, 100, 104, 106, 107, 115. Courts have found continuity in cases involving much shorter durations and fewer victims than is alleged here. *See Cal. Architectural*, 818 F.2d at 1469 (five months); *see also Alves*, 2007 WL 6004919, at *10 (holding repeated misrepresentations through various media outlets were sufficient).

**RICO Standing.** Plaintiffs have alleged facts sufficient to plausibly allege RICO standing. "To allege civil RICO standing, a plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was by reason of' the RICO violation." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1248 (9th Cir. 2019). Plaintiffs have sufficiently alleged both injury and proximate causation.

First, an "injury to business or property" is established where a plaintiff pleads financial harm due to the RICO violation. As the Supreme Court aptly put it: "Money, of course, is a form of property." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979). As such, a "person," like Plaintiffs, "whose property is diminished by a payment of money wrongfully induced is injured in his property." *Id.* at 340. Plaintiffs have plainly alleged an injury to property: they spent money on rigged gambling games. *See, e.g.*, FAC ¶¶ 43, 116. That is not a speculative loss. And it is enough to plead "injury to his business or property." *See Painters & Allied Trades*, 943 F.3d at 1248.

Defendants argue that gambling losses are categorically excluded from RICO recovery. Mot. at 10. But, as noted above, Plaintiffs are not seeking to recover gambling losses. Moreover, gambling losses can establish RICO standing when they result from fraud. *See, e.g.*, *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 2021 WL 5449733, at *11 (E.D.N.Y. Nov. 22, 2021); *McLeod v. Valve Corp.*, 2016 WL 5792695 (W.D. Wash. Oct. 4, 2016); *Adell*, 785 F. Supp. 2d at 1239; *Cf. Schwartz v. Upper Deck Co.*, 104 F. Supp. 2d 1228, 1230–31 (S.D. Cal. 2000).

**Causation.** "A plaintiff asserting a private cause of action for a RICO violation must also satisfy a causation requirement: the plaintiff must plausibly allege that the RICO violation was a 'but for' cause and proximate cause of its asserted injuries." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, at *8 (N.D. Cal. Oct. 30, 2017) (citing *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008)). "But for" causation requires alleging that if not for the alleged RICO activity, the plaintiff would not have suffered injury to her business or property. *Id.* The inquiry turns on a "'sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury[.]'" *Id.* at *9.

Courts do not require a showing of proximate cause as to each predicate act. *Just Film, Inc. v. Merch. Servs., Inc.*, 2012 WL 6087210, at *12 (N.D. Cal. Dec. 6, 2012). "Instead, the plaintiff must prove only an injury directly resulting from some or all of the activities comprising the violation." *Id.* That is exactly what Plaintiffs allege here. Had Plaintiffs "known the truth about the way in which the Wheel of Fortune-themed gaming devices operate," they "would not have risked money playing the devices." FAC ¶¶ 116, 84, 79, 74, 69; *see also* ¶¶ 120–121. That is, by definition, "but for" causation. *See id.*

Defendants incorrectly argue Plaintiffs lack proximate cause because they did not rely on fraudulent marketing. ECF No. 40 at 15. But the Supreme Court has been clear that reliance is not required for RICO mail fraud claims. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008) ("[N]o reliance showing is required to establish that a person has violated § 1962(c) by conducting an enterprise's affairs through a pattern of racketeering activity predicated on mail fraud. Nor can a first-party reliance requirement be derived from § 1964(c)."). Courts often apply *Bridge* to RICO claims predicated on wire fraud, as well. *See, e.g.*, *United States v. Arif*, 897 F.3d 1, 10 (1st Cir. 2018). Defendants ignore these authorities, which post-date *Poulos v. Caesars World, Inc.*, No. CV-S-94-1126-RLH, 2002 WL 1991180, at *9 (D. Nev. June 25, 2002), a case heavily relied upon by Defendants. *See* ECF No 40 at 15.

**Rule 9(b)'s Heightened Pleading Standard.**[2] Defendants argue that Plaintiffs fail to allege the "'the who, what, when, where, and how'" of Defendants' false or misleading conduct as required by Federal Rule of Civil Procedure 9(b) for fraud claims. ECF No. 40 at 19. But "this standard 'does not require absolute particularity or a recital of the evidence[.]" *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). For example, "a complaint need

---

[2] This topic pertains to both Plaintiffs' common law fraud and RICO claims (which are premised upon mail and wire fraud violations).

- 14 -

not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *Id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Plaintiffs allege that Defendants (the who), promoted the rigged Wheel of Fortune game as possessing a free-spinning wheel (the what), citing to certain promotions and promotional videos published to the public and casinos where the devices were deployed (the where) including on certain dates (the when). FAC ¶¶ 30-61. Plaintiffs' allegations are surely specific enough to provide notice of the misconduct constituting the fraud. *See, e.g.*, *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F. 2d 287 (9th Cir. 1988); *Bui v. Nguyen*, 712 F. App'x 606, 609 (9th Cir. 2017); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071, 1082–83 (S.D. Cal. 2006).

### B. *Plaintiffs State a Claims for Unjust Enrichment*

In Nevada, "'Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another.'" *Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1119 (D. Nev. 2014). The elements are: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Id.* Plaintiffs plead that Defendants received and appreciated the benefit of Plaintiffs' money spent playing the rigged game, and that it would be inequitable for Defendants to retain it. *See, e.g.*, FAC ¶¶ 46-50, 63-82, 124-125; *see also Takiguchi*, 47 F. Supp. 3d at 1119–20. Plaintiffs have stated an unjust enrichment claim.

### C. *Plaintiffs State a Claim for Negligent Misrepresentation*

Nevada has adopted the Restatement (Second) of Torts § 552 definition for the tort of negligent misrepresentation, defined as follows:

> One who, in the course of his business . . . or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by

> their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 449, 956 P.2d 1382, 1387 (1998). Plaintiffs have adequately and with requisite particularity pled false statements Defendants made, *see* FAC ¶¶ 31, 33–40, 43–48, 50–57, 99, 101–102, 106-107, 111, 115, 120, 124, and Plaintiffs' justifiable reliance on this information, *id.* at ¶¶ 31, 33, 45, 48-50, 63-82, 129, and also the damages Plaintiffs suffered as a result*, id*. at ¶¶ 49-50, 63-82, 129. Thus, they plead each element of fraudulent misrepresentation. *See, e.g.*, *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 928 (N.D. Cal. 2024) ("this Court will permit the plaintiffs' claims of negligent misrepresentation by omission under Nevada law to proceed."); *In re Agribiotech, Inc.*, 291 F. Supp. 2d 1186, 1191–92 (D. Nev. 2003); *Epperson v. Roloff*, 102 Nev. 206, 719 P.2d 799, 803–04 (1986); *Bill Stremmel Motors, Inc. v. First Nat'l Bank*, 94 Nev. 131, 575 P.2d 938, 940 (1978)); *see also Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1417 (D. Nev. 1995) (concluding that fraud by nondisclosure under Restatement § 551 and Nevada law requires a duty to disclose).

* * * * *

In sum, Defendants cannot show that a stay of discovery is warranted pursuant to the *Kor Media Group* factors because a "preliminary peek" does not leave a reader "convinced" that the pending motion to dismiss will be granted. *See Kor Media Group*, 294 F.R.D. at 581; *Maldonado v. HSBC Mortg. Servs., Inc.*, No. 2:16-CV-784-JAD-VCF, 2017 WL 131744, at *2 (D. Nev. Jan. 10, 2017) (denying a request for a stay of discovery because "this court is not convinced that [the movant] will prevail on its motion to dismiss."); *Wide Voice, LLC v. Sprint Commc'ns Co. L.P.*, No. 2:15-CV-1604-GMN-VCF, 2016 WL 155031, at *2 (D. Nev. Jan. 12, 2016) (denying a motion to stay discovery because "[t]he court is unconvinced that [the plaintiff] will be unable to state a claim for relief."); *Martinez*, 2015 WL 8328275, at *5 (D. Nev. Dec. 8, 2015) (denying a motion

to stay discovery where some claims appeared unlikely to move forward, but others appeared viable). This Court has subject matter jurisdiction over Plaintiffs' claims and Plaintiffs have plausibly alleged each element of each cause of action. *See* ECF No. 45. Defendants' Motion should be swiftly denied.

## II. A Stay Is Not Warranted Under the Court's Inherent Authority

Courts have "broad discretionary power to control discovery." *Hernandez*, 2021 WL 1997253 at *1. When a Court is determining whether to stay discovery under its inherent power, it is "guided by the objectives of Fed. R. Civ. Pro. 1 that ensures a 'just, speedy, and inexpensive determination of every action.'" *Id*. (quoting *Kor Media Group, LLC*, 294 F.R.D. at 581). As detailed above, Defendants' motion to dismiss in the instant matter is likely to be denied. *See* ECF Nos. 40, 45. Given that probability, the balance of Rule 1's considerations of speediness and expense weigh strongly against Defendant's request to stay discovery. *See Arlitz v. GEICO Cas. Co.*, No. 219-cv-00743, 2020 WL 6324339, at *1 (D. Nev. Sept. 28, 2020) ("An overly lenient standard for granting requests to stay would result in unnecessary delay in many cases."). The complexity of the claims at issue only further underline the importance of beginning discovery forthwith in this matter, so that Plaintiffs—and the putative class members—may receive a just and speedy adjudication of their claims. *See Harmoni Int'l Spice*, 2016 WL 11783827 at *5 ("The RICO causes of action may require significant discovery; as such, the Court declines to stay discovery in order to avoid undue delay of the proceedings.").

/ / /

**CONCLUSION**

For the foregoing reasons, the Motion should be denied in its entirety.

Dated: May 27, 2027                                    THE O'MARA LAW FIRM, P.C.

/s/ David C. O'Mara, Esq.
DAVID C. O'MARA, ESQ.
311 E. Liberty St
Reno, NV 89501
775.323.1321
david@omaralaw.net

**THE MILLER LAW FIRM**
E. POWELL MILLER (*pro hac vice*)
GREGORY A. MITCHELL (*pro hac vice*)
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
E-Mail: epm@millerlawpc.com

**HEDIN LLP**
FRANK S. HEDIN
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
E-Mail: fhedin@hedinllp.com

**HEDIN LLP**
TYLER K. SOMES (*pro hac vice*)
1100 15th Street NW, Ste 04-108
Washington, D.C. 20005
Telephone: (202) 900-3331
E-Mail: tsomes@hedinllp.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, I electronically filed the foregoing document(s) using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

Dated: May 27, 2024

/s/ *Valerie Weis*
VALERIE WEIS