DAVID A. CARROLL (NSB #7643)
Email: dcarroll@rrsc-law.com
ANTHONY J. DIRAIMONDO (NSB #10875)
Email: adiraimondo@rrsc-law.com
ROBERT E. OPDYKE (NSB #12841)
Email: ropdyke@rrsc-law.com
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099

*Attorneys for Defendants IGT; MGM Grand Detroit, LLC;
Blue Tarp reDevelopment, LLC; UTGR, LLC; NP Palace LLC;
Coast Hotels and Casinos, Inc.; and The Cannery Hotel and Casino, LLC*

PAUL G. KARLSGODT (*Pro hac vice*)
Email: pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California St., Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600

CARRIE DETTMER SLYE (*Pro hac vice*)
Email: cdettmerslye@bakerlaw.com
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202-4074
Telephone: (513) 852-2626

*Attorneys for Defendant IGT*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARLOTTE BOWNES; JOSEPH LAGRECA; JESSICA NAUMANN; and FERMIN OROPEZA PALACIOS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IGT; MGM GRAND DETROIT LLC; BLUE TARP REDEVELOPMENT, LLC; UTGR, LLC; NP PALACE LLC; COAST HOTELS AND CASINOS, INC.; THE CANNERY HOTEL AND CASINO, LLC,<br><br>Defendants. | Case No.: 3:24-cv-00528-ART-CSD<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** |

## I. INTRODUCTION

Plaintiffs' Opposition to the motion to dismiss ("Opp.") fails to show that this Court has subject matter jurisdiction over gaming disputes by casino patrons like Plaintiffs. The Ninth Circuit and Nevada courts—as well as the Nevada legislature—have confirmed that the Nevada Gaming Control Board ("GCB") has **exclusive** jurisdiction to hear gaming disputes by casino patrons, including "gaming debts," "alleged winnings," "alleged losses," and "the manner in which a game is conducted." *See* NRS § 463.361; § 463.362.

Although Plaintiffs' Opposition therefore understandably seeks distance from their Complaint allegations of gaming losses and fraudulent operation of Wheel of Fortune ("WOF") games, Plaintiffs have boxed themselves into a corner in doing so. Either (1) their claims relate to monetary losses suffered by playing WOF games or the manner in which WOF games are conducted, meaning that the Nevada GCB has exclusive jurisdiction and their Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1); or (2) they allege no concrete, financial loss, meaning that they have suffered no RICO or common law damages and their Complaint should be dismissed pursuant to Fed. R. Civ. P.12(b)(6). Either way, their action cannot be maintained.

## II. ARGUMENT[1]

### A. Plaintiffs Fail to Establish That This Court Has Subject Matter Jurisdiction.

Plaintiffs go to lengths to reshape their claims to try to avoid dismissal under NRS § 463.361, claiming that their case is unrelated to gaming losses. Specifically, Plaintiffs now assert that their "claims concern neither debts nor the outcome of any game" and that their "claims arise in significant part from facts occurring *before* they ever played the games, namely, Defendants' representations and omissions concerning operation of the Wheel of Fortune-themed gaming devices." (Opp. at 8 n.5 (emphasis in original).)

But Plaintiffs' arguments directly contradict the facts alleged in their own Complaint, including their repeated allegations that they "lost *money* playing the Wheel of Fortune-themed

---

[1] Because Plaintiffs do not dispute that Nevada law applies, Defendants do not address choice of law in this Reply.

1

gaming devices." (FAC ¶¶ 66, 71, 76, 81 (emphasis added)); *see also* (*id.* ¶¶ 49–50, 69, 74, 79, 84, 116, 121 (had Plaintiffs "known the truth about the way in which the Wheel of Fortune-themed gaming devices operate, [they] would not have risked money playing the devices.")); (*id.* ¶¶ 116, 121 ("Plaintiffs and members of the Class were further injured by the loss of all or part of the money they spent playing the Wheel of Fortune-themed electronic gaming devices.")); (*id.* ¶ 111 ("Plaintiffs and the Class members were injured in their property through the expenditure and loss of their money to play such devices.")); (*id.* ("Plaintiffs played and lost property (e.g., money) on gaming devices….")); (*id.* ¶¶ 125, 131 (Plaintiffs "suffered injury by spending and losing money to play the Wheel of Fortune-themed electronic gaming devices….")). Given that the crux of their alleged injuries is money lost on WOF games, it is disingenuous for Plaintiffs to suggest that their case is not about gaming losses.

Nor can Plaintiffs avoid dismissal by asserting that their claims arose *before* they ever played WOF games, as they now apparently assert, because they have no alleged losses to support a claim for damages. To the contrary, Nevada law is clear that an alleged harm cannot be hypothetical, speculative, or describe other possible future injuries. *Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 821 (9th Cir. 2002); *see also Frias Holding Co. v. Greenberg Traurig, LLP*, No. 11–cv–00160, 2011 WL 4500936, at *4 (D. Nev. Sept. 26, 2011). And if there are no damages, no claim can be maintained. *See Petersen v. Bruen*, 106 Nev. 271, 273, 792 P.2d 18, 20 (1990) ("cause of action accrues when the wrong occurs and a party sustains injuries"); *Boulder City v. Miles*, 85 Nev. 46, 49, 449 P.2d 1003, 1005 (1969) ("no one has a claim against another without having incurred damages"). Plaintiffs cannot have it both ways. It cannot be true that "Plaintiffs seek to recover monies they spent on certain gaming machines," (Opp. at 5), and that their claims also arose before they played on those machines (*Id.* at 8 n.5).

Moreover, Plaintiffs' contention that they are not seeking to recover for a "gaming debt" fails for at least four additional reasons.

*First*, Plaintiffs' attempt to have the Court read NRS §§ 463.361 (which references "gaming debt") and 463.362 (which references "winnings" and "losses") separately has no basis in any

2

applicable standard for statutory interpretation. NRS § 463.361 *cross references* NRS § 463.362, and any interpretation that reads the two provisions in isolation is also contrary to binding Nevada precedent holding that plain statutory language must be given effect and that the two provisions be read in harmony with each other.[2] A statute's language controls, and related provisions should be read in harmony with each other. *See Allstate Ins. Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009) ("We read statutes within a statutory scheme harmoniously with one another to avoid an unreasonable or absurd result."); *In re George J.*, 128 Nev. 345, 349, 279 P.3d 187, 190 (2012) ("This court 'avoid[s] statutory interpretation that renders language meaningless or superfluous,' and '[i]f the statute's language is clear and unambiguous, [this court will] enforce the statute as written.'"). Simple rules of statutory construction compel the Court to read NRS §§ 463.361 and 463.362 *together* to avoid "an unreasoned or absurd result." *Allstate Ins. Co.*, 125 Nev. at 138.

*Second*, even if NRS §§ 463.361 and 463.362 could be read in isolation from each other, Plaintiffs fail to address why their claims for alleged gaming losses do not fall under NRS § 463.362(1). (*See* ECF No. 40 at 6:3–7.) NRS § 463.362(1) provides in relevant part, "*[w]henever a patron and a licensee … have any dispute which cannot be resolved to the satisfaction of the patron and which involves*: (a) *Alleged winnings*, *alleged losses* … [T]he Board, through an agent, shall conduct whatever investigation it deems necessary and shall determine whether payment should be made.*" NRS § 463.362 (emphasis added).[3] Because Plaintiffs allege that they "lost money playing the Wheel of Fortune-themed gaming devices" (FAC ¶¶ 66, 71, 76, 81),[4] regardless

---

[2] NRS § 463.361(2) ("A claim by a patron of a licensee for payment of a gaming debt that is not evidenced by a credit instrument may be resolved in accordance with NRS 463.362 to 463.366, inclusive: (a) By the Board.").

[3] Plaintiffs do not dispute that each Defendant is a "licensee" under the statute.

[4] Plaintiffs' attempts to recharacterize their claims as seeking "to recover monies they spent on certain gaming machines due to Defendants' fraudulent design and promotion of those devices," (Opp. at 5:5-6), are directly contradicted by the allegations in the Complaint. On a motion to dismiss, a court can look only to the allegations in a complaint and not to allegations made for the first time in an opposition to the motion. *See, e.g.*, *Gardner v. Sage Ridge Sch.*, No. 24-CV-004030, 2025 WL 384563, at *3 (D. Nev. Feb. 4, 2025) ("'[A] court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.'" (quoting *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003))).

3

of whether Plaintiffs' allegations are considered a "gaming debt," Plaintiffs' instant disputes are over the "alleged losses" that they have incurred and "the manner in which the [WOF Bonus Wheel Feature] operates"; thus, they fall under NRS § 463.362(1)(b). Simply put, Plaintiffs' disputes must be resolved by the Nevada GCB. *See Nelson v. MGM Grand Hotel, LLC*, 287 F. App'x 587, 589 (9th Cir. 2008) ("[A]t bottom, Nelson seeks to undo the results of gambling. Under Nevada statute, such debts can be recovered only by a proceeding before the Nevada State Gaming Control Board.").

*Third*, Plaintiffs rely on inapposite case law that ignores a crucial amendment to Nevada law. Most notably, Plaintiffs rely on *Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 697 (9th Cir. 1991), for the proposition that a consumer can recover for lost money in a crooked gambling game, (Opp. at 8:13–17), even though *Erickson* was decided in 1991, before, as Plaintiffs admit, "the Nevada Legislature amended NRS 463.362 to encompass disputes involving 'alleged losses' in addition to 'alleged winnings.'" (*Id*. at 6:24–25.) Tellingly, Plaintiffs do not address the effect of this amendment. Instead, they focus on the definition of "gaming debt," arguing that it was "untouched" by the amendment. (*Id*. at 7:1–3). But the definition of "gaming debt" under NRS § 463.361 is irrelevant to the amendment to NRS § 463.362, which expanded the Nevada GCB's jurisdiction to hear disputes over not only "alleged winnings," but also "alleged losses."

Plaintiffs also incorrectly claim that since the 1995 amendment, "this Court has confirmed the continuing viability of the *Erickson* rule." (Opp. at 7:4–6 (citing *Toll v. Nevada Prop. 1, LLC*, No. 2:20-cv-00929, 2021 WL 5853587 (D. Nev. Dec. 9, 2021)).) As Defendants noted in their motion to dismiss, the unpublished and non-binding decision by Judge Dawson in *Toll* is an outlier. (ECF No. 40 at 8 n.8.); *see U.S.A v. Angel Diaz*, No. 3:18-cr-00057-MMD-CSD-4, 2025 WL 1470844, at *5 (D. Nev. 2025) ("[A] decision at the district court level generally constitutes persuasive authority that is not binding on the other judges at the district court level…."). Indeed, *Toll* is the *only* decision allowing a party to assert a claim outside the administrative process since 1995, and it is not binding on this Court. Every other decision holds otherwise. (ECF No. 40 at 6–7 (collecting cases).)

4

*Fourth*, and finally, Plaintiffs fail to point to a single Nevada case that rebuts Defendants' argument that the federal RICO claims should be dismissed for failure to comply with Nevada's administrative exhaustion requirement. Although Plaintiffs claim that "it is well established that 'state administrative exhaustion requirements are not jurisdictional in federal court,'" (Opp. at 9:11–12 (citing *Does 1-4 v. Butler Univ.*, 712 F. Supp. 3d 1154, 1157 (S.D. Ind. 2024)), Plaintiffs do not cite a single Nevada case that supports this "well established" principle, let alone a decision holding that a federal RICO claim is not subject to the exhaustion requirement.

The cases that Plaintiffs do cite are distinguishable and not binding. For example, *Does 1-4* involved claims for negligent supervision of a sexual abuser and the scope of Indiana's Medical Malpractice Act, *see* 712 F. Supp. 3d at 1157, and *Perkins v. Gregg Count*, No. 94 CV 328, 1995 WL 836051 (E.D. Tex. Dec. 6, 1995), involved claims of retaliation under 42 U.S.C. § 1983 and conspiracy to injure a witness for testimony in federal court under 42 U.S.C. 1985(2).[5] *See id.* at *1.[6] Similarly, in *AT&T Communications System v. Pacific Bell*, 203 F.3d 1183, 1184 (9th Cir. 2000), involving the Telecommunications Act of 1996, the court held that Congress did not intend to incorporate state law administrative remedies into the Act only because the legislative history made clear that Congress wanted the Act to take effect as quickly as possible, and any state law requiring a rehearing would "stand in the way" of the Act. *Id.* It also bears emphasis that the Act expressly foreclosed the possibility of state court review. *Id.*[7] But here, unlike in *AT&T*, the Nevada law is not "in the way" of a federal statute and does not foreclose the GCB's jurisdiction:

---

[5] *See also Tenn. Coal, Iron & R.R. Co. v. George*, 233 U.S. 354 (1914) (involving a plea in abatement under Alabama Code § 6115).

[6] Similarly, although Plaintiffs argue their RICO claims are not subject to Nevada's exhaustion requirements because "nothing in the RICO Act indicates that Congress intended to incorporate state law administrative remedies" (Opp. at 10:5–6), Plaintiffs again fail to cite a single case involving the federal RICO Act.

[7] Plaintiffs otherwise cite to out-of-circuit cases in Indiana and Louisiana that do not involve a federal RICO claim and are on these bases distinguishable. *See, e.g., Smith v. Indiana*, 904 F. Supp. 877, 878 (N.D. Ind. 1995) (plaintiffs not required to exhaust administrative procedures under Indiana Medical Malpractice Act when bringing claims under Title II of ADA); *Bernius v. Ochsner Med. Ctr.-N. Shore, L.L.C.*, No. CV 16-14730, 2016 WL 10586188, at *7 (E.D. La. Dec. 15, 2016) (plaintiffs not required to exhaust state administrative procedures under Louisiana Medical Malpractice Act when bringing claims under Rehabilitation Act of 1973, Patient Protection and Affordable Care Act, and Louisiana Commission on Human Rights).

5

to the contrary, the Nevada Legislature made clear that the Nevada GCB has *exclusive* jurisdiction to hear gaming disputes by casino patrons like Plaintiffs under NRS §§ 463.361 and 463.362. Plaintiffs cannot circumvent this requirement by characterizing a dispute over gambling losses as a RICO conspiracy.

Plaintiffs' RICO claims are subject to the exclusive jurisdiction of the Nevada GCB for the simple reason that they arise from a dispute over gaming losses. *See, e.g.*, *Bhambra v. Port of Oakland*, No. C 08-05326 CRB, 2009 WL 10694600, at *3–4 (N.D. Cal. Mar. 23, 2009) (dismissing civil RICO claim for failing to exhaust statutory administrative process under state law and noting that "Plaintiffs' attempts to frame this as a racketeering enterprise does not save them from the exhaustion requirement"). *Cf. Nelson v. MGM Grand Hotel, LLC*, No. 05-CV-1542, 2006 WL 8441792, at *4 (D. Nev. July 12, 2006) ("[M]asking a claim for gambling losses with a myriad of state law claims will not circumvent Nevada law"), *aff'd*, 287 F. App'x 587 (9th Cir. 2008); *Nelson*, 287 F. App'x at 589 (affirming dismissal of state law claims for negligence, fraud, conversion, negligent misrepresentation, loss of discounts, and breach of contract and finding that "[plaintiff's] attempt to recoup his gambling losses under the guise of common law causes of action is totally unavailing"). The Ninth Circuit agrees: "We do not believe the Nevada legislature intended to allow parties to avoid the administrative process simply by alleging fraud in a patent attempt to force a casino to turn over alleged winnings." *Erickson*, 942 F.2d at 697.

Because Plaintiffs' claims are within the exclusive jurisdiction of the Nevada GCB, Defendants respectfully ask the Court to dismiss Plaintiffs' Complaint with prejudice for lack of subject matter jurisdiction.

### B. Plaintiffs Fail to Establish The Plausibility of Their Claims.

Plaintiffs' Complaint proceeds from an absurd premise. In Plaintiffs' view, Defendants conspired to hide that the results of the "Bonus Wheel Feature" of WOF games are determined not by "the laws of physics," but rather by an "internal computer." (FAC ¶¶ 5, 24, 43, 45, 47, 56.) But Defendant IGT's publicly-available patent clearly states that the "bonus indicator is connected to a[n] electromechanical control unit…." (Opp. at 3:16 (internal quotations and citation omitted.).)

6

Further, the patent provides that "the mechanical bonus payout indicator is electromechanically operated and is linked to a random number generator which determines where the bonus indicator actually stops." U.S. Patent No. 5,823,874 (Oct. 20, 1998). In essence, then, Plaintiffs seek to recover for a "secret" scheme that has been in the open from the start. Because Plaintiffs' claims are based on this implausible theory, those claims should be dismissed.

Moreover, having twisted their damages allegations into knots to avoid dismissal for lack of subject matter jurisdiction, Plaintiffs are left with sidestepping key arguments and regurgitating the same conclusory and insufficient allegations. Specifically, Plaintiffs ignore almost entirely Defendants' primary argument that Plaintiffs lack standing under RICO, providing instead what amounts to a white paper on RICO litigation untethered to their legal claims and factual allegations. (Opp. at 10–17.) And Plaintiffs' barebones response in opposition to the motion to dismiss their fraud, unjust enrichment, and negligent misrepresentation claims likewise does nothing to prevent their dismissal. (*Id.* at 22–24.)

### 1. Plaintiffs Do Not Have Standing to Pursue Their RICO Claims.

As an initial matter, there is no merit to Plaintiffs' argument that they alleged a RICO injury because "they spent money on rigged gambling games." (*Id.*)[8] In essence, Plaintiffs are arguing that they would have suffered a RICO injury *even if they made money from playing "rigged" WOF games*. Not only is this argument inconsistent with the allegations of gaming losses, (FAC ¶¶ 49–50, 69, 74, 79, 84, 116, 121), it is unsupported by case law and implausible on its face. There must be a concrete, financial loss for purposes of a RICO claim. *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994).

Nor are Plaintiffs' allegations of "gambling losses" and lost opportunity to obtain a financial benefit RICO injuries. (ECF No. 40 at 9–10.) Plaintiffs make no effort to distinguish any case cited by Defendants holding that Plaintiffs alleging their own gambling losses cannot establish "injury to business or property" under RICO. *See id.* at 9–10; Opp. at 20–21.

---

[8] To the extent that Plaintiffs are also now arguing that their "injury" occurred *before* they played the games, (Opp. at 8 n.5), Plaintiffs have no injury to "business or property" proximately caused by any RICO violation. 18 U.S.C. § 1964(c).

7

Moreover, the cases Plaintiffs do cite support Defendants' position because the courts there dismissed RICO claims alleging gaming losses—including those that contained unsupported allegations of "fraud."[9] *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (affirming dismissal of RICO claims for lack of standing); *McLeod v. Valve Corp.*, No. C1601227, 2016 WL 5792695, at *3 (W.D. Wash. Oct. 4, 2016) (dismissing RICO claim for lack of standing and finding that "Plaintiffs fail to plead any facts that actually connect the alleged rigging of the gambling to any injury suffered by Plaintiffs…. Taken together, it is clear that each time Plaintiffs played they received an opportunity to win and received a benefit of their bargain."); *Adell v. Macon Cnty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1239–40 (M.D. Ala. 2011) (dismissing RICO claim for lack of standing and rejecting plaintiffs' allegations of fraud "because they fail to plead facts connecting the alleged rigging of any electronic bingo machine (i.e., the alleged fraudulent and dishonest conduct) to an injury suffered by them").

The same analysis applies here. Because Plaintiffs fail to plead facts connecting the alleged "rigging" of WOF games with any financial loss—and argue in their Opposition that their claims do not concern the outcome of WOF games—their claims fall squarely in the holdings of these cases and should be dismissed.

Further, with respect to their failure to allege injury proximately caused by Defendants' racketeering conduct, Plaintiffs incorrectly argue that "Defendants seriously mischaracterize the present state of the law." (Opp. at 21–22.) Most notably, although the Supreme Court in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 661 (2008),[10] held that a plaintiff asserting a RICO claim predicated on mail fraud need not show reliance akin to common law fraud, it also clarified that "none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail

---

[9] Plaintiffs' citation to "*In re Am. Express Anti-Steering Rules Antitrust Litig.*, 2021 WL 5449733, at *11 (E.D.N.Y. Nov. 22, 2021)" (Opp. at 21), is incorrect.

[10] Plaintiffs' dependence on *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 476–78 (2006), for their argument that reliance is not required is misplaced. (Opp. at 16 n.8.) In that case, which was decided before *Bridge*, the majority did not reach reliance in a RICO claim. Plaintiffs instead cite Justice Thomas's separate opinion, and even then, they fail to cite to his clarification that even if reliance is not an element of RICO, "that is not to say, in the general case, a plaintiff will not have to prove that someone relied on the predicate act of fraud as part of his case." 547 U.S. at 478 (Thomas, J., concurring in part and dissenting in part).

8

fraud can prevail without showing that someone relied on the defendant's misrepresentations.... In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation." *Id.* at 658–59, 661.

Indeed, the Ninth Circuit recently held that such causation is required. Relying on *Bridge*, the Ninth Circuit concluded that "RICO's causation requirement is also expressed through the legal element of reliance." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192–93 (9th Cir. 2024); *see also Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 765–66 (9th Cir. 2024) ("The rule in *Bridge* does not help CHD because the key deficiency in CHD's claims of wire fraud is not that the alleged deception targeted third parties; it is the disconnect between the alleged deception and the asserted injury to CHD.").

Here, there is no causal connection between Defendants' alleged racketeering conduct and Plaintiffs allegations that they believed that the computerized slot machines operated like mechanical wheels subject to the laws of gravity that caused them to lose money.[11]

Plaintiffs' RICO claim should be dismissed on this basis alone.

### 2. Plaintiffs Do Not Plausibly Allege the Other Elements of RICO.

Plaintiffs' other arguments against dismissal of the RICO claim are equally unavailing because Plaintiffs similarly rely on the same conclusory allegations. (Opp. at 15–17); *Eclectic Props. E., LLC, v. Marcus & Millichap Co.*, 751 F.3d 990, 997–98 (9th Cir. 2014) (affirming dismissal of RICO claim because allegations did not exclude "alternative explanation that the transactions were merely a group of business deals" that cost parties money.).

To the contrary, Plaintiffs cite to cases that support Defendants' arguments that allegations must be pled consistent with Rule 9. *See, e.g.*, *Does 1-60 v. Republic Health Corp.*, 669 F. Supp. 1511, 1517 (D. Nev. 1987) ("plaintiffs allege only that the "defendants" generally were the perpetrators"; "plaintiffs have not provided times or places of the alleged criminal acts"; and

---

[11] Plaintiffs' accusation that Defendants improperly failed to cite to a First Circuit decision, *United States v. Arif*, 897 F.3d 1 (1st Cir. 2018), is not well taken. That case is not analogous and is not binding on this Court in any event. *Carrillo v. County of L.A.*, 798 F.3d 1210, 1223 (9th Cir. 2015) ("Only in the absence of binding precedent do we consider other sources of decisional law such as out-of-circuit cases.")

9

"plaintiffs have not sufficiently alleged the content of the misrepresentations that they allege were made," which "does not allow proper responsive pleading by the defendants on the subject of the alleged predicate acts"); *Pecot v. SF Deputy Sheriff's Ass'n*, No. 08-05125, 2009 WL 585877, at *2–3 (N.D. Cal. Mar. 6, 2009) (dismissing three predicate acts because "plaintiffs do not allege with particularity when or how that misrepresentation was made" and "do not allege the dates, parties and amounts of the allegedly unauthorized contributions").

Throughout their discussion of the RICO claims, Plaintiffs largely ignore the caselaw cited by Defendants, instead relying primarily on cases from other jurisdictions. (*See generally* Opp. at 10–17.) Although Plaintiffs argue that courts "routinely recognize RICO enterprises in similar circumstances," (*id*. at 13), the cases that they cite are distinguishable and do not involve licensed games at licensed casino properties. *See, e.g.*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (scheme between retailer and internet provider to inflate sales of software; included particularized pled facts of agreement between defendants); *Cannon v. Wells Fargo Bank*, No. C-12-1376, 2014 WL 324556, at *3 (N.D. Cal. Jan. 29, 2014) (scheme to increase forced place insurance on homeowners in exchange for kickback; included particularized facts of kickbacks); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL 4890594, at *16 (N.D. Cal. Oct. 30, 2017) (scheme to create fraudulent emissions tests to increase sales); *Alves v. Players Edge, Inc.*, No. 05CV1654, 2007 WL 6004919, at *10–11 (S.D. Cal. Aug. 8, 2007) (infomercial scheme).[12]

Finally, Plaintiffs' arguments opposing dismissal of their RICO claims under Section 1962(a) and (d) are unavailing.

As for their Section 1962(a) claim, Plaintiffs cannot escape that they have alleged only "[r]einvestment of proceeds from alleged racketeering activity back into the enterprise to continue

---

[12] Similarly, Plaintiffs cite to inapposite, out-of-circuit cases in support of their argument that they have alleged a pattern of racketeering activity. (Opp. at 15–17); *see, e.g.*, *Stewart v. Fairley*, No. CIV 13-1502, 2014 WL 12538164, at *3–4 (D. Ariz. June 4, 2014) (unreported, non-precedential decision with complaint that "contains detailed allegations documenting the instances of fraud allegedly committed by" defendants); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg.*, 295 F. Supp. 3d 927, 979 (N.D. Cal. 2018) (particularized allegations of scheme to conceal that they installed devices in vehicles that reduced effectiveness of emissions control systems).

its racketeering," which is insufficient to show proximate causation. *Sybersound Records, Inc v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008); (FAC ¶ 111.) Plaintiffs improperly rely on *IBM Corp. v. Brown*, 134 F.3d 377, 379–80 (9th Cir. 1998), to argue that "[c]ourts recognize this type of reinvestment-based injury" as sufficient to state a Section 1962(a) claim; *Brown* is an unpublished decision that cannot be cited, *see* Circuit Rule 36-3(c) ("Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit."). Plaintiffs' citations to *S. Service Corp. v. Excel Building Services, Inc.*, No. 05-CV-0297, 2007 WL 9700655, at *4 (D. Nev. Aug. 13, 2007), and *Brice v. Haynes Investments, LLC.*, 548 F. Supp. 3d 882, 894 (N.D. Cal. 2021), also do not support their claims. In both those cases, the courts allowed a claim to proceed only because the allegations included more than "simply reinvest[ing] the racketeering income back into itself," *Brice*, 548 F. Supp. 3d at 894, and "is distinct from the harm that may be suffered from the actual RICO violation," *S. Serv. Corp.*, 2007 WL 9700655, at *4. That is not what Plaintiffs alleged here.

As for Section 1962(d), Plaintiffs mistakenly rely on *Oki Semiconductor Co. v. Wells Fargo Bank, National Ass'n*, 298 F.3d 768, 774–75 (9th Cir. 2002), to argue that Defendants are still liable under Section 1962(d) even if Plaintiffs cannot state a claim under Section 1962(a) or (c). But the Ninth Circuit in *Oki Semiconductor* dismissed Plaintiffs' substantive RICO claims for failure to allege proximate cause and held that an employer could not be vicariously liable for an employee's alleged conspiracy to commit RICO violations. *Id.*

### 3. Plaintiffs Do Not Plausibly Allege Fraud, Unjust Enrichment, And Negligent Misrepresentation Claims.

Plaintiffs' fraud claim fails because it is merely a "recitation of … elements and conclusions that those elements have been met." *DeLeon v. Robinson*, No. 23-cv-01452, 2024 WL 5056020, at *2 (D. Nev. Dec. 9, 2024) (internal citations and quotations omitted); (FAC ¶ 124). Such conclusory pleading is not sufficient to survive dismissal.

Plaintiff similarly recite in a conclusory manner the elements of their unjust enrichment claim. (FAC ¶ 127.) Rather than substantively respond to Defendants' arguments concerning the

11

inadequacy of that claim, they recite in a conclusory manner the elements of that cause of action, which is insufficient to defeat a motion to dismiss. *Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914, 922 (C.D. Cal. 2023); *see also Axelrod v. Lenovo (U.S.) Inc.*, No. 21-cv-06770, 2022 WL 976971, at *3 (N.D. Cal. Mar. 31, 2022) (dismissing claims for equitable relief because plaintiffs "do not differentiate the facts that support their claims" for equitable relief "from the facts that support their other claims").

Plaintiffs do the same for their negligent misrepresentation claim. They do not explain why the allegedly false statements are false or even allege that Plaintiffs relied on them. Moreover, to the extent that Plaintiffs are arguing that Defendants had a duty to disclose, (Opp. at 24 n.13), that is incorrect. Defendants cite to cases where public safety may be implicated, including the duty to disclose the hazardous nature of PCBs (*Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1417 (D. Nev. 1995)); the duty to issue a dealer's report of sale of a vehicle (*Bill Stremmel Motors, Inc. v. First Nat'l Bank*, 94 Nev. 131, 575 P.2d 938, 940 (1978)); the duty to report issues with leakage during the sale of a home (*Epperson v. Roloff*, 102 Nev. 206, 719 P.2d 799, 803–04 (1986)); the duty to disclose the financial stability of a company in a business transaction (*In re Agribiotech, Inc.*, 291 F. Supp. 2d 1186, 1191–92 (D. Nev. 2003)); and the duty to disclose the risks of addiction and mental harm to minors from social media use (*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 928 (N.D. Cal. 2024)). None of these situations is implicated here.

### C.  **CONCLUSION**

For the reasons above and for the reasons stated in their Motion, Defendants respectfully request that the Court grant this Motion and that Plaintiffs' First Amended Class Action Complaint be dismissed *with prejudice*.[13]

---

[13] Plaintiffs' request to amend their claims should be denied. "When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Chaset*, 300 F.3d at 1088 (affirming denial of leave to amend where plaintiffs could not cure inability to demonstrate standing). Here, the Complaint should be dismissed with prejudice because Plaintiffs will be unable to assert any cognizable claim in this Court resulting from their gaming losses.

12

DATED this 2nd day of June, 2025.

Respectfully submitted,

By: *s/ Carrie Dettmer Slye*

PAUL G. KARLSGODT (*Pro hac vice*)
Email: pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California St., Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600

CARRIE DETTMER SLYE (*Pro hac vice*)
Email: cdettmerslye@bakerlaw.com
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202-4074
Telephone: (513) 852-2626

*Attorneys for Defendant IGT*

DAVID A. CARROLL (NSB #7643)
Email
ANTHONY J. DIRAIMONDO (NSB #10875)
Email: adiraimondo@rrsc-law.com
ROBERT E. OPDYKE (NSB #12841)
Email: ropdyke@rrsc-law.com
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099

*Attorneys for Defendants IGT, MGM Grand Detroit, LLC, Blue Tarp reDevelopment, LLC, UTGR, LLC, NP Palace LLC, Coast Hotels and Casinos, Inc., and The Cannery Hotel and Casino, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed via this Court's CM/ECF system, which system will cause the forgoing to be electronically served upon the following:

David C. O'Mara
THE O'MARA LAW FIRM, P.C.
311 E. Liberty St
Reno, NV  89501
775.323.1321
david@omaralaw.net

E. Powell Miller, *pro hac vice*
Gregory A. Mitchell, pro hac vice
THE MILLER LAW FIRM
950 W. University Drive, Suite 300
Rochester, MI  48307
248.841.2200
epm@millerlawpc.com

Frank S. Hedin, *pro hac vice*
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, FL  33131
305.357.2107
fhedin@hedinllp.com

Tyler K. Somes, *pro hac vice*
HEDIN LLP
1100 15th Street NW, Suite 04-108
Washington, DC  20005
202.900.3331
tsomes@hedinllp.com

Dated: June 2, 2025

                                           *s/ Carrie Dettmer Slye*
                                           Carrie Dettmer Slye