UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| CHARLOTTE BOWNES; JOSEPH LAGRECA; JESSICA NAUMAN; and FERMIN OROPEZA PALACIOS, individually and on behalf of all other similarly situated,<br><br>                              Plaintiffs,<br><br>       v.<br><br>International Game Technology PLC, *et al.*,<br><br>                              Defendants. | Case No. 3:24-cv-00528-ART-CSD<br><br>ORDER |

Plaintiffs Charlotte Bownes, Joseph Lagreca, Jessica Naumann, and Fermin Oropeza Palacios bring this class action complaint against Defendants MGM Grand Detroit LLC, Blue Tarp reDevelopment LLC, UTGR LLC, NP Palace LLC, Coast Hotels and Casinos, The Cannery Hotel and Casino ("Casino Defendants"), and International Game Technology ("IGT") alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and state common law. (ECF No. 30.) This case concerns Casino Defendants' promotion and operation of Wheel of Fortune-themed electronic gaming devices, which were manufactured and sold by IGT. (*Id.*) Before the Court is Defendants' joint motion to dismiss (ECF No. 40). As detailed below, the Court dismisses Plaintiffs' First Amended Complaint, without prejudice, and with leave to amend.

## I.    FACTS AND PROCEDURAL HISTORY

The following allegations are adapted from Plaintiffs' First Amended Complaint ("FAC"). (ECF No. 30.) IGT designs and manufactures Wheel of Fortune-themed electronic gaming devices. (*Id.* at ¶¶ 1–2.) Electronic gaming devices are electromechanical devices which, after paying, are available to play or operate as a gambling game. (*Id.* at ¶ 22.) The most common type of electronic gaming devices are slot machines, which often contain three or more spinning

1

reels containing a variety of symbols. (*Id.* at ¶ 23.) Players place bets by inserting money into the machine, which causes the reels to spin. (*Id.*) If the reels land on designated symbols, the player is awarded a certain amount of money based on which symbols appear. (*Id.*) Unlike mechanical games like roulette which operate according to chance, the outcomes of modern slot machines are pre-determined by a computer chip containing a random number generator. (*Id.*)

Wheel of Fortune-themed electronic gaming devices contain an attached spinning bonus wheel that creates a game-within-a-game. (*Id.* at ¶ 25.) If a certain symbol appears on the primary component of the game, the player gets an opportunity to spin an attached wheel containing several equal-sized segments. (*Id.*) These segments each correspond to a specific monetary amount. (*Id.*) When the spinning wheel stops, the indictor points to a particular segment of the wheel showing how much money the player has won. (*Id.*)

According to Plaintiffs, Wheel of Fortune devices are designed to replicate the movement of a normal mechanical wheel, which has an equal chance of landing on each segment. (*Id.* at ¶ 31.) IGT encourages this perception through its design of the devices, which emphasizes the association with the Wheel of Fortune television game show by its use of familiar voices, sound effects, and imagery from the television show. (*Id.* at ¶¶ 32–38.) IGT has also used Vanna White, the famous co-host of the Wheel of Fortune television show, to promote the game. (*Id.* at ¶ 39.) As a result, players reasonably believe that the wheel has an equal chance of stopping at each segment of the wheel, giving them just as much of a chance of winning the highest-value prize as the lowest-value prize. (*Id.* at ¶¶ 32–43.)

However, Defendants failed to disclose that the outcome of a player's spin is instead predetermined by an internal computer, which can ensure that the wheel stops more frequently at the lowest-value segment. (*Id.* at ¶¶ 43–45.) According to Plaintiffs, each of the Casino Defendants programmed the internal

computers of each Wheel of Fortune device at their gaming establishments to stop much more frequently on the segments of the wheel with lower monetary amounts than the segments of the wheel with higher monetary segments. (*Id.* at ¶¶ 46–47.)

Consequently, because Plaintiffs reasonably expected they would have an equal chance of winning the highest amount as the lowest, Plaintiff alleged that they were induced to play a game that they would not have otherwise played, and deprived of the money they would have won if the game was as represented. (*Id.* at ¶ 49.)

All plaintiffs allege that they played at least one Wheel of Fortune-themed gaming device with the Bonus Wheel Feature manufactured, sold, distributed by IGT, while present at a gaming establishment operated by at least one of the Casino Defendants. (*Id.* at ¶ 64.)

Plaintiff Charlotte Bownes specifically alleges that while a resident of Detroit, Michigan, she played Wheel of Fortune-themed gaming devices containing the Bonus Wheel Feature at the MGM Grand Detroit on or about November 23, 2021, and November 24, 2001. (*Id.* at ¶¶ 15, 65–69.)

Plaintiff Joseph Lagreca alleges that he was a resident of East Providence, Rhode Island, when he played Wheel of Fortune-themed gaming devices with the Bonus Wheel Feature at the Bally's Twin River Lincoln Casino on August 13, 2022, and the MGM Springfield on October 2, 2022. (*Id.* at ¶¶ 16, 70–74.) These casinos were owned by Casino Defendants UTGR and Blue Tarp, respectively. (*Id.*)

Plaintiff Jessica Naumann alleges she was a resident of Las Vegas, Nevada, and played Wheel of Fortune-themed gaming devices with the Bonus Wheel Feature on January 18, 2021, at Palace Station, operated by Casino Defendant NP Palace, and on January 18, 2021, at the Orleans, operated by Casino Defendant Coast Hotels and Casino. (*Id.* at ¶¶ 17, 75–79.)

Plaintiff Fermin Oropeza Palacios alleges that he lived in Los Angeles, California, when he played Wheel of Fortune-themed gaming devices with the Bonus Wheel Feature at the Cannery Hotel and Casino on May 15, 2024. (*Id.* at ¶¶ 18, 80–84.)

Plaintiffs bring six claims in the FAC: (1) RICO, 18 U.S.C. § 1962(a); (2) RICO, 18 U.S.C. § 1962(c); (3) RICO, 18 U.S.C. § 1962(d); (4) fraud; (5) unjust enrichment; and (6) negligent misrepresentation. (ECF No. 30.) After Plaintiffs filed the FAC, Defendants moved to dismiss. (ECF No. 40.) Plaintiffs responded to the joint motion to dismiss (ECF No. 45), and Defendants replied. (ECF No. 48.)

## II.    STANDARD OF REVIEW

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678-79.

Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." This particularity standard requires alleging "the who, what, when, where, and how of the misconduct

charged, including what is false or misleading about a statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (cleaned up). Allegations under Rule 9(b) must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Id.*

## III.   DISCUSSION

### A. Jurisdiction

Defendants first argue that the Court lacks subject matter jurisdiction because Plaintiffs' claims fall within the exclusive jurisdiction of the Nevada Gaming Control Board ("NGCB"). (ECF No. 40 at 6–10.)

"Nevada courts 'traditionally followed the common law doctrine ... that a gaming debt is not legally enforceable . . . .'" *Zoggolis v. Wynn Las Vegas, LLC*, 768 F.3d 919, 921 (9th Cir. 2014) (quoting *Sigel v. McEvoy*, 707 P.2d 1145, 1146 (Nev. 1985) (citations omitted)). In 1983, the Nevada legislature codified this doctrine in NRS 463.361, which provides "that gaming debts not evidenced by a credit instrument are void and unenforceable and do not give rise to any administrative or civil cause of action." NRS 463.361(1). However, NRS 463.361(2) provides that "[a] claim by a patron of a licensee for payment of a gaming debt that is not evidenced by a credit instrument may be resolved . . . by the [Nevada Gaming Control] Board." This provision allows these previously prohibited actions to be exclusively resolved by the NGCB. Disputes that fall under the NGCB's jurisdiction include those involving "alleged winnings, alleged losses or the award or distribution of cash, prizes, benefits, tickets or any other item or items in a game, tournament, contest, drawing, promotion or similar activity or event." NRS 463.362(1)(a).

While Defendants cite a variety of cases to support their argument that Plaintiffs' claims are not properly before the Court, those cases involve parties

seeking to recover discrete winnings or losses resulting from playing a game. *See Sengel v. IGT,* 2 P.3d 258, 259–60 (Nev. 2000) (plaintiff sought unpaid winnings from a slot machine which displayed three jackpot symbols); *Harrah's Club v. Nev. State Gaming Control Bd.,* 766 P.2d 900, 902 (Nev. 1988) (same)*; Devon v. Unbelievable Inc.,* 820 F. Supp. 528, 529 (D. Nev. 1993) (claim for roughly $100,000 in slot machine jackpot winnings). In contrast, Plaintiffs in this case are not necessarily seeking to recover winnings or losses from gambling but are instead contending that they were fraudulently induced to play a game through deceptive design and promotion. (ECF No. 30.) In essence, Plaintiffs are not seeking payment of a gaming debt, but instead are contending that they would not have played the game if it transparently represented what it was.

Additionally, any claims by Plaintiffs to recover losses sustained by Defendants' fraudulent inducement are properly before this Court. Defendants contend that the Nevada legislature's 1995 amendment of NRS.361(2), which added "alleged losses," would sweep in all suits to recover losses from "crooked gambling games," such as cases involving loaded dice, extra cards, and more. (ECF No. 40 at 9–10.) However, while suits at common law for recovery of gambling debts were prohibited, plaintiffs who alleged losing money in a crooked gambling game could bring a civil action, before and after the enactment of NRS NRS 463.361. *See Erickson v. Desert Palace, Inc.,* 942 F.2d 694, 696 (9th Cir. 1991); *Berman v. Riverside Casino Corp.,* 323 F.2d 977, 979 (9th Cir. 1963). There is no evidence that the 1995 inclusion of "alleged losses" would change this tradition. One recent case even affirmatively indicates to the contrary. *See Toll v. Nevada Prop. 1, LLC,* No. 2:20-CV-00929-KJD-DJA, 2021 WL 5853587, at *4 (D. Nev. Dec. 9, 2021) (confirming that "a party may [still] assert an action outside the administrative process to recover gambling losses sustained due to casino fraud" (quoting *Erickson,* 942 F.2d at 697)).

Because Plaintiffs are not seeking payment of a gaming debt within the

meaning of NRS 463.361(2), Plaintiffs were not required to exhaust their claims before the NGCB. The Court therefore finds that it has jurisdiction over Plaintiffs' claims.

### B. Failure to State a Claim

Defendants contend that if the Court has jurisdiction, Plaintiffs' claims should be dismissed for failure to plead plausible claims. (ECF No. 40 at 10.)

#### 1. RICO

Defendants argue that Plaintiffs' RICO claims fail for four reasons: (1) Plaintiffs do not sufficiently allege statutory standing; (2) Plaintiffs fail to plead existence of an enterprise; (3) Plaintiffs fail to plead a "pattern of racketeering activity;" and (4) Plaintiffs fail to plead viable claims under Section 1962(a) or (d). (ECF No. 40 at 11.)

The elements of a civil RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property. *United Broth. Of Carpenters and Joiners of America v. Building and Const. Trades Dept., AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). A defendant engages in a pattern of racketeering activity by committing at least two enumerated predicate criminal acts within a specified time frame. *Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992, 1000 (D. Nev. 2019). Personal injuries are not compensable under RICO. *Id.*

In this case, the predicate acts are alleged to be mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. (ECF No. 30 at ¶ 100.) "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud and contain three elements:" (1) "the formation of a scheme to defraud," (2) "the use of the mails or wires in furtherance of that scheme," and (3) "the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). The "scheme to defraud" element requires an "affirmative, material representation." *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir.

2010) (quoting *United States v. Benny,* 786 F.2d 1410, 1418 (9th Cir. 1986)). However, the misrepresentation does not need to be made through the mails or wires, instead, the use of the mails or wires only needs to be "a step in the plot." *United States v. Garlick,* 240 F.3d 789, 795 (9th Cir. 2001)

The heightened pleadings standards applicable to fraud claims under Federal Rule of Civil Procedure 9(b) apply to federal civil RICO actions. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991). Rule 9(b) requires that the circumstances constituting fraud are stated with particularity, including the time, place, and specific content of the false representation. *Schreiber c. Distributing Co. v. Serv-Well Furniture Co., Inc.,* 806 F.2d 1393, 1400 (9th Cir. 1986)). Rule 9(b) does not allow a complaint to "merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Swartz v. KPMG LLP,* 476 F.3d 756, 764–65 (9th Cir. 2007).

### i. Statutory Standing

Defendants first argue that Plaintiffs do not have statutory standing under RICO because they fail to allege a concrete financial loss proximately caused by Defendants. (ECF No. 40 at 11–13.)

To allege standing under RICO, a "plaintiff must show (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty. v. Syngenta Seeds, Inc.,* 519 F.3d 969, 972 (9th Cir. 2008) (citations omitted). An injury "by reason of" a RICO violation requires Plaintiffs "to show that a RICO predicate offense 'not only was a 'but for' cause of [their] injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York,* 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv. Prot. Corp.,* 503 U.S. 258, 268 (1992)). "When a Court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led

directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Defendants contend that Plaintiffs' loss of an opportunity for greater financial gain is too speculative to constitute concrete financial loss for statutory standing. (ECF No. 40 at 10.) However, Plaintiffs have clearly alleged concrete financial harm, namely that they were induced to spend money on the Wheel of Fortune-themed gaming devices through the deceptively designed and promoted Bonus Wheel Feature. (ECF No. 30 at ¶¶ 44–50.) This financial harm—the expenditure of money—is clearly a concrete harm to property, not a speculative or intangible injury. *See, e.g., Painters and Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1247 (9th Cir. 2019) (plaintiffs sought "to recover economic damages under RICO for the payments they made to purchase [a drug] under the assumption that it was a safe drug, which they allege they would not have purchased had they known that [the drug]" was not safe).

Defendants also argue that Plaintiffs fail to plead a causal connection between Defendants' alleged racketeering activity and Plaintiffs' decisions to play Wheel of Fortune-themed gaming devices, because Plaintiffs did not rely on any fraudulent marketing. (ECF No. 40 at 12–13.) Plaintiffs allege two predicate acts under RICO: (1) mail fraud, and wire fraud. (ECF No. 30 at ¶ 100.) However, Plaintiffs do not adequately allege a causal connection between the predicate acts and their injury, because they do not specifically allege that any Plaintiff relied on the misrepresentations contained in any marketing or promotions. (*See* ECF No. 30.) Plaintiffs argue in their response that reliance is not required. (ECF No. 45 at 22–23.) However, while the Supreme Court acknowledged that "a person [could] be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations," generally plaintiffs must allege that "someone relied on the defendant's misrepresentation." *Bridge v. Phoenix Bond & Indem. Co.*, 553

U.S. 639, 649, 658 (2008). Plaintiffs, however, have failed to allege that any party relied on the misrepresentations transmitted through mail or wires.

Because Plaintiffs fail to allege a causal connection between the alleged predicate acts, and Plaintiffs' harm, Plaintiffs do not adequately allege statutory standing for their RICO claims.

### ii. Existence of an Enterprise

Plaintiffs allege that each of the Casino Defendants and IGT comprise an association-in-fact enterprise designed to conceal the true nature of the Wheel of Fortune-themed electronic gaming devices that have a Bonus Wheel Feature. (*See e.g.,* ECF No. 30 at ¶¶ 95–99.) Defendants contend that Plaintiffs allege nothing more than "facially legitimate business transactions," and thus "fall short of pleading the 'significant level of factual specificity' that would allow for a reasonable inference of a fraudulent scheme." (ECF No. 40 at 14 (quoting *Eclectic Props. E., LLC*, 751 F.3d at 997–98).)

To plead the existence of an association-in-fact enterprise, Plaintiffs must allege that the enterprise has (1) "a common purpose," (2) "a structure or organization," and (3) "longevity necessary to accomplish the purpose." *Eclectic Props. E., LLC*, 751 F.3d at 997.

Plaintiffs' allegations fail to show anything more than routine commercial relationships among Defendants, with Casino Defendants buying Wheel of Fortune-themed gaming devices from IGT, and Casino Defendants paying for those devices. (See ECF No. 30 at ¶ 42, 58–63.) Such allegations are not enough to plead the existence of an enterprise. *See Gomez v. Guthy-Renker, LLC,* No. EDCV1401425JGBKKX, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (finding that "very few Courts [have treated] allegations of routine commercial relationships as sufficient to support a RICO claim"). Plaintiffs also do not allege the length of the relationship between Defendants, and therefore fail to allege "longevity necessary to accomplish the purpose." Thus, because Plaintiffs have

not alleged any specific facts that move their allegations from possible to plausible, Plaintiffs fail to sufficiently allege the existence of an enterprise under Rule 9(b)'s heightened pleading standard.[1]

### iii.  RICO Claims under Sections 1962(a) or (d)

Plaintiffs also allege civil RICO claims under sections 1962(a) and (d). (ECF No. 30 at ¶¶ 93–112, 118–122.) Defendants contend that these claims fail, respectively, because (1) Plaintiffs do not sufficiently allege injuries proximately caused by the reinvestment of allegedly ill-gotten gains into Defendants' businesses, and (2) Plaintiffs' fail to allege substantive RICO claims that form the basis of 1962(d). (ECF No. 40 at 18–20.)

To allege a section 1962(a) RICO claim, a plaintiff "must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). That requires Plaintiffs to allege "an investment injury separate and distinct from the injury flowing from the predicate act." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008).

Here, Plaintiffs' alleged injuries stem from Defendants' supposed racketeering activity, namely their misrepresentations and material nondisclosures that induced Plaintiffs to play the Wheel of Fortune-themed gaming devices. (ECF No. 30 at ¶¶ 93–112.) The complaint contains general allegations that Defendants received significant income from their fraudulent scheme that was then used to expand their enterprise, including through research, design, development, and deployment of new machines. (*Id.* at ¶¶ 110–111.) Plaintiffs allege that they then played and lost money on gaming devices and at establishments developed or expanded through the use of racketeering

---

[1] Because Plaintiffs fail to allege statutory standing and the existence of an enterprise, and thus fail to allege a RICO violation under 18 U.S.C. § 1962(c), the Court does not address whether Plaintiffs adequately allege a pattern of racketeering.

proceeds. (*Id.*) However, "[r]einvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation," and Plaintiffs conclusory allegations do not include sufficient, specific facts causing the reasonable inference that Plaintiffs were actually harmed by the use of investment of racketeering income. *Sybersound Recs., Inc.*, 517 F.3d at 1149. The Court therefore dismisses Plaintiffs' section 1962(a) RICO claims with leave to amend.

Because Plaintiffs have failed to plead a substantive violation of RICO under sections 1962(a) or (c), their section 1962(d) claim must also fail. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Because we conclude that the section 1962(c) claim cannot be saved by amendment, it follows that the section 1962(d) claim also cannot be saved."). Defendants' motion to dismiss Plaintiffs' section 1962(d) claim will therefore be granted with leave to amend.

### 2. Fraud

Plaintiffs allege that Defendants fraudulently induced Plaintiffs to spend money playing Wheel of Fortune-themed gaming devices, by knowingly making false representations and concealing the true facts, causing Plaintiffs to believe that the Bonus Wheel Feature operated like a true mechanical wheel, when results were predetermined by a computer. (ECF No. 30 at ¶ 124.) Defendants argue that Plaintiffs fail to allege "facts detailing the 'who, what, when, where, and how'" regarding any manipulative and deceptive conduct and fail to identify false or misleading conduct of any specific Defendant related to the design, appearance, labeling, branding, promotion, distribution, configuration, and maintenance of the Wheel of Fortune games. (ECF No. 40 at 20–21.)

To allege fraud, Federal Rule of Civil Procedure 9(b) requires a party to state

"with particularity" the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the complaint must include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Cuadros v. State Farm Fire and Cas. Co.*, No. 2:16-CV-2025-JCM-VCF, 2017 WL 2683681, at *4 (D. Nev. June 20, 2017) (quoting *Swartz,* 476 F.3d at 764).

The plaintiff must allege the following elements with particularity: "(1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) that defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation." *Greenstein v. Wells Fargo Bank, N.A.*, 2:14-CV-01457-APG-CWH, 2017 WL 1173916, at *4 (D. Nev. 2017) (quoting *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998)).

While Plaintiffs generally allege that Defendants engaged in deceptive conduct to induce them to play the Wheel of Fortune-themed gaming devices, they largely do not identify with specificity which Defendants made which false representations. (*See* ECF No. 30.) Instead, Plaintiffs lump Defendants together and describe their supposedly fraudulent conduct in broad and conclusory terms. (*Id.* at ¶¶ 30–63, 123–125.) Such allegations fall short of the pleading standard set forth in Rule 9(b).

Furthermore, Plaintiffs' basis for Defendants knowledge or belief that its representations were false is ostensibly tied to the language of IGT's patent. As relevant here, the patent describes how the Bonus Wheel Feature works and says that "players can be provided with a realistic sense of a totally mechanical indicator." (*Id.* at ¶¶ 44–45.) However, the patent goes on to state that "such a control unit can also readily be connected to a random generator which will randomly select the winning payout according to a predetermined frequency of

13

occurrence for each individual bonus payment, and then cause the bonus indicator to stop at the desired area." (*Id.*) Reference to this patent, however, does not show that Casino Defendants had knowledge or a belief that any representations it made were false, as there is no evidence that Casino Defendants were aware of the language of this patent.

Plaintiffs thus do not sufficiently allege false representations by Defendants that were made with knowledge or belief of their falseness. The Court therefore dismisses Plaintiffs' fraud claims without prejudice, and with leave to amend.

### 3. Unjust Enrichment

Plaintiffs' unjust enrichment claims allege that Defendants received income to which they had no legal right as a result of their wrongful conduct. (ECF No. 30 at ¶ 127.) Defendants contend that Plaintiffs' unjust enrichment claims are wholly insufficient, as they fail to provide substantive factual allegations explaining why legal remedies will not make them whole and fail to allege facts entitling them to relief. (ECF No. 40 at 21–22.)

To state a claim for unjust enrichment under Nevada state law, a plaintiff must show "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit." *Kennedy v. Carriage Cemetery Services, Inc.*, 727 F. Supp. 2d 925, 932 (D. Nev. 2010) (citing *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997)). "Plaintiffs must allege that there is no adequate remedy at law for their unjust enrichment claim to proceed." *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1197–98 (D. Nev. 2022).

Plaintiffs' unjust enrichment claims, which consist of one paragraph, fail to allege, even in a conclusory fashion, that legal remedies are unavailable. (ECF No. 30 at ¶ 127.) The Court is unable to conclude that Plaintiffs' injuries cannot be remedied by money damages because their claims for money damages are seemingly predicated on the same conduct as their unjust enrichment claims. (*Id*

14

at ¶ 126.) Plaintiffs' unjust enrichment claims are therefore dismissed, with leave to amend.

### 4. Negligent Misrepresentation

Plaintiffs allege that Defendants negligently misrepresented and failed to disclose the true nature and operation of the Wheel of Fortune-themed gaming devices, causing financial injury when Plaintiffs played the game in reliance on such misrepresentations and omissions. (ECF No. 30 at ¶¶ 129–131.) In response, Defendants argue that Plaintiffs fail to identify any specific statement by Defendants that was false and fail to allege that they justifiably relied on the identified promotional materials. (ECF No. 40 at 22–23.)

To state a claim for negligent misrepresentation in Nevada, a plaintiff must allege that the defendant (1) "in the course of [its] business, profession or employment, or in any other action in which [it] has a pecuniary interest, [(2)] supplie[d] false information [(3)] for the guidance of others in their business transactions" and (4) caused pecuniary loss (5) by the plaintiff's "justifiable reliance upon the information," (6) if defendant "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." *Barmettler*, 956 P.2d at 1387. Courts in the Ninth Circuit have held that claims for negligent misrepresentation must meet Rule 9(b)'s particularity requirements. *Nevada Rest. Servs., Inc. v. Factory Mut. Ins. Co.*, No. 2:22-CV-01104-RFB-VCF, 2023 WL 2572301, at *3 (D. Nev. Mar. 20, 2023) (collecting cases).

Plaintiffs' negligent misrepresentation claims do not identify what false statements Defendants made, but instead recite the elements of a negligent misrepresentation claim in a conclusory fashion. (ECF No. 30 at ¶¶ 128–131.) The fact section of Plaintiffs' complaint alleges that Casino Defendants generally stocked the Wheel of Fortune-themed devices in their casinos but does not allege which Casino Defendants conveyed fraudulent information, when the information was conveyed, or where. *See Larson v. Homecomings Fin., LLC,* 680

15

F. Supp. 2d 1230, 1234 (D. Nev. 2009) (stating that Rule 9(b)'s particularity standard requires "an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations." (citations omitted)). Plaintiffs' claim for negligent misrepresentation thus fails because it was not pled with specificity under Rule 9(b).

Moreover, the "statements" that Plaintiffs allege Defendants making in the factual background section consist largely of omissions. (ECF No. 30 at ¶¶ 31, 33–40, 43–48, 50–57, 99, 101–102, 106–107, 111, 115, 120, 124.) "[B]efore an omission can constitute negligent misrepresentation, a special relationship must exist between the parties such that the defendant had a duty to speak." *Smallman*, 638 F. Supp. 3d at 1193. "The Nevada Supreme Court has held that a special relationship may exist where 'one party interposes confidence in the other because of that person's position and the other party knows of this confidence.'" *Bond Mfg. Co., Inc. v. Ashley Furniture Indus., Inc.*, No. 2:17-cv-1522, 2018 WL 1511717, at *7 (D. Nev. Mar. 27, 2018) (quoting *Mackintosh v. Matthews & Co.*, 855 P.2d 549, 553 (Nev. 1993)). "For example, '[t]he Nevada Supreme Court has recognized such a special relationship between real estate agents/buyers, insurers/insureds, trustees/beneficiaries, and attorneys/clients,' such that nondisclosure becomes 'the equivalent of fraudulent concealment.'" *Smallman*, 638 F. Supp. 3d. at 1193 (quoting *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, 933 F. Supp. 2d 1279, 1292 (D. Nev. 2013) (citation omitted)). There is no evidence that Casino Defendants or IGT had a special relationship with Plaintiffs such that disclosure was mandated, nor do Plaintiffs cite to any case law suggesting as such. (*See* ECF Nos. 30; 45.) In the absence of a special relationship, Plaintiffs' negligent misrepresentation claims, to the extent that such claims are based on omissions, must fail.

The Court thus dismisses Plaintiffs' negligent misrepresentation claims with leave to amend.

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (ECF No. 40) is GRANTED without prejudice.

IT IS FURTHER ORDERED that Plaintiffs are granted leave to amend to address the issues noted herein. Plaintiffs may file an amended complaint by Monday, April 20, 2026.

DATED THIS 18th day of March 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

17