DAVID A. CARROLL (NSB #7643)
Email: dcarroll@rrsc-law.com
ANTHONY J. DIRAIMONDO (NSB #10875)
Email: adiraimondo@rrsc-law.com
ROBERT E. OPDYKE (NSB #12841)
Email: ropdyke@rrsc-law.com
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099

*Attorneys for Defendants IGT; MGM Grand Detroit, LLC;*
*Blue Tarp reDevelopment, LLC; UTGR, LLC; NP Palace LLC;*
*Coast Hotels and Casinos, Inc.; and The Cannery Hotel and Casino, LLC*

PAUL G. KARLSGODT (*Pro hac vice*)
Email: pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California St., Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600

*Attorneys for Defendant IGT*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CHARLOTTE BOWNES; JOSEPH LAGRECA; JESSICA NAUMANN; and FERMIN OROPEZA PALACIOS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IGT; MGM GRAND DETROIT LLC; BLUE TARP REDEVELOPMENT, LLC; UTGR, LLC; NP PALACE LLC; COAST HOTELS AND CASINOS, INC.; THE CANNERY HOTEL AND CASINO, LLC,<br><br>Defendants. | Case No.: 3:24-cv-00528-ART-CSD<br><br>**DEFENDANTS' JOINT MOTION FOR RECONSIDERATION BASED ON INTERVENING AUTHORITY AND NEW ALLEGATIONS, OR, IN THE ALTERNATIVE, TO CERTIFY THE JURISDICTIONAL QUESTION TO THE NEVADA SUPREME COURT**<br><br>*ORAL ARGUMENT REQUESTED – LR 78-1* |

Defendants IGT; MGM Grand Detroit LLC; Blue Tarp reDevelopment, LLC; UTGR, LLC; NP Palace LLC; Coast Hotels and Casinos, Inc.; and The Cannery Hotel and Casino, LLC, (collectively, "Defendants") hereby jointly move for reconsideration of the Court's March 18, 2026 Order (ECF No. 54) denying Defendants' motion to dismiss for lack of subject matter jurisdiction (ECF No. 40.) In the alternative, Defendants move to certify the question of subject matter jurisdiction to the Nevada Supreme Court.

Defendants base this motion on Fed. R. Civ. P. 12(b)(1), LR 59-1, Nev. R. App. P. 5, the following memorandum of points and authorities, all pleadings and other papers on file with the Court, and any oral argument that the Court may entertain.

DATED: June 2, 2026

Respectfully submitted,

/s/ *Paul G. Karlsgodt*
DAVID A. CARROLL (NSB #7643)
Email: dcarroll@rrsc-law.com
ANTHONY J. DIRAIMONDO (NSB #10875)
Email: adiraimondo@rrsc-law.com
ROBERT E. OPDYKE (NSB #12841)
Email: ropdyke@rrsc-law.com
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099

*Attorneys for Defendants IGT, MGM Grand Detroit, LLC, Blue Tarp reDevelopment, LLC, UTGR, LLC, NP Palace LLC, Coast Hotels and Casinos, Inc., and The Cannery Hotel and Casino, LLC*

PAUL G. KARLSGODT  (*Pro hac vice*)
Email: pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California St., Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600

*Attorney for Defendant IGT*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

### I.    INTRODUCTION

Defendants respectfully move for reconsideration of the Court's March 18, 2026 Order (ECF No. 54) (the "Order") in light of both intervening authority and materially expanded allegations in Plaintiffs' Second Amended Class Action Complaint ("SAC"). In its prior Order, the Court concluded that it had jurisdiction based on Plaintiffs' theory that they were fraudulently induced to play Defendants' Wheel of Fortune ("WOF") game. Recent controlling Nevada Supreme Court authority has now clarified the scope of the Nevada Gaming Control Board's ("NGCB") exclusive jurisdiction, and Plaintiffs have also significantly reshaped their allegations in ways that bring this case squarely within that regulatory framework.

Taken together, these developments warrant reconsideration. At a minimum, they confirm that the jurisdictional question presented here is both controlling and important under Nevada law, such that certification to the Nevada Supreme Court is appropriate if the Court declines to revisit its ruling.

### II.    BACKGROUND

Plaintiffs' SAC alleges that the WOF game is "rigged" because Plaintiffs were allegedly misled into believing that the game has equal odds when the game's outcomes are actually determined by secret "internal" computers that apply unequal odds. (SAC ¶¶ 5, 27, 42–43, 47, 49, 50–51, 75, 78, 110, 218–19, 229, 291.) As a result, Plaintiffs assert claims of fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), unjust enrichment, negligent misrepresentation, and violations of various consumer protection acts. (*Id*. ¶¶ 174–321.) Plaintiffs allege that Defendants' conduct both "induces players to initiate and continue play" and "deprives players of the monies they would have won." (*Id.* ¶ 54.) Each Plaintiff claims that he or she "lost money playing the [WOF]-themed gaming devices." (*Id.* ¶¶ 141, 146, 151, 156.)

On April 17, 2025, Defendants filed a motion to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC"). (ECF No. 40.) Defendants argued that the FAC should be dismissed for both lack of subject matter jurisdiction and failure to state a claim. While the Court granted

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Defendants' motion to dismiss for failure to state a claim, the Court denied Defendants' motion to dismiss for lack of subject matter jurisdiction. (ECF No. 54 at 5:9–16:28.)

In its Order, the Court rejected Defendants' argument that Plaintiffs' claims fall within the exclusive jurisdiction of the NGCB. (*Id.* at 7:1–3.) Relying in significant part on *Toll v. Nevada Property 1, LLC*, an unpublished district court decision, this Court found that "a party may [still] assert an action outside the administrative process to recover gambling losses sustained due to casino fraud." (*Id.* at 6:23–27 (quoting No. 2:20-cv-00929-KJD-DJA, 2021 WL 5853587, at *4 (D. Nev. Dec. 9, 2021)).) The Court held that "Plaintiffs were not required to exhaust their claims before the NGCB," and that "it has jurisdiction over Plaintiffs' claims." (*Id.* at 7:1–3.)

Since this Court's Order, Plaintiffs have added four new causes of action (Counts 7–10) to their SAC that were not included in either of their two previous complaints. (SAC ¶¶ 287–321.) These causes of action claim: (1) violation of the Michigan Consumer Protection Act, MCL §§ 445.901, *et seq.*, (2) violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1, *et seq.*, (3) violation of the Nevada Deceptive Trade Practices Act, NRS §§ 598.0903, *et seq.*, and (4) breach of the California Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* (*Id.* ¶¶ 287–321.) As explained below, these new allegations—together with an intervening legal decision—warrant reconsideration of the Court's prior jurisdictional Order.

### III.    ARGUMENT

#### A.  Intervening Law and Plaintiffs' New Allegations Warrant Reconsideration

A "district court may reconsider an interlocutory order for cause, so long as it retains jurisdiction." *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-01667-ART-VCF, 2025 WL 562654, at *1 (D. Nev. Feb. 20, 2025). Under LR 59-1(a), reconsideration may be appropriate if "(1) there is newly discovered evidence that was not available when the original motion or response was filed, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *See also Las Vegas*, 2025 WL 562654, at *1 (this Court applying the local rule's legal standard); *Dep't of Emp. Training & Rehab. v. Lyft, Inc.*, No. 3:23-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

cv-00442-ART-CLB, 2025 WL 1826682, at *2 (D. Nev. July 2, 2025) (same).

As explained below, reconsideration is warranted in light of an intervening change in controlling law and the additional factual allegations in Plaintiffs' SAC.

### 1. Reconsideration is Warranted Due to New Law

As Defendants explained in their motion to dismiss, the NGCB governs jurisdiction over gaming disputes. (ECF No. 40 at 5.) This statute provides that "the Board . . . shall determine whether payment should be made" for "any dispute" which involves "[a]lleged winnings" or "alleged losses." NRS § 463.362; *see also* NRS § 463.361 (providing that a "claim . . . for payment of a gaming debt that is not evidenced by a credit instrument may be resolved in accordance with NRS 463.362"). The Nevada Supreme Court has interpreted this to mean that the "[NGCB] has exclusive jurisdiction to resolve a disputed claim . . . by a patron of a gaming licensee for payment of gambling debt." *Sengel v. IGT*, 2 P.3d 258, 260 (Nev. 2000); *see also* (ECF No. 40 at 6 (collecting cases).)

Importantly, the Supreme Court has recently issued a decision that controls this case. *Friedlander v. Tamarack Junction Race & Sports Book*, 585 P.3d 482, 484 (Nev. 2026) (citing *Sengel*, 2 P.3d at 260). In *Friedlander*, the plaintiff alleged that he was deprived of the payout he believed he was entitled to because the defendant imposed undisclosed limits on the odds, thereby reducing his payout from what he would have received at full track odds. 585 P.3d at 484. The Nevada Supreme Court held that the dispute—centered on alleged entitlement to gambling payouts based on purportedly misleading odds—fell "within the exclusive jurisdiction of the Board to resolve." *Id.* at 486.

Plaintiffs' theory here is materially indistinguishable. They allege that Defendants' conduct both "induces players to initiate and continue play" and "deprives players of the monies they would have won," (SAC ¶ 54), resulting in "lost money." (*Id.* ¶¶ 141, 146, 151, 156.) In other words, like the plaintiff in *Friedlander*, Plaintiffs claim they are entitled to payouts they did not receive because of the manner in which the game's odds were presented or operated. That is precisely the type of dispute *Friedlander* holds must be resolved through the administrative process. Because

3

Plaintiffs' claims, at their core, seek recovery of "monies they [allegedly] would have won" based on purportedly misleading odds, they fall squarely within the Board's exclusive jurisdiction.

The Court's previous reliance on *Toll*, an unpublished district court decision, does not change this result. 2021 WL 5853587, at \*4 (quoting *Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 697 (9th Cir. 1991)). *Friedlander* confirms that *Toll* is an outlier and inconsistent with more current Nevada Supreme Court decisions providing that "disputes over gaming payouts are within the exclusive jurisdiction of the Board." 585 P.3d at 484.

Reconsideration is appropriate here because *Friedlander* was issued just six days before this Court issued its jurisdictional Order. (ECF No. 54.) Although Defendants promptly moved for leave to submit *Friedlander* as supplemental authority (ECF No. 53), the motion was filed only one day before the Court's Order issued. Because the Court did not cite or address *Friedlander*, Defendants respectfully submit that it constitutes an intervening change in controlling law. *Zeiter v. Walmart Inc.*, No. 2:21-cv-00061-ART-DJA, 2026 WL 892518, at \*6 (D. Nev. Mar. 31, 2026) (this Court granting reconsideration in part due to recent issued authority). This Court should grant Defendants' motion for reconsideration and dismiss this case for lack of jurisdiction.

**2. Reconsideration is Warranted in Light of Plaintiffs' New Allegations**

Reconsideration is also proper here based on Plaintiffs' now-expanded SAC, which has more than double the allegations of the FAC. Specifically, Plaintiffs have added four additional claims to the SAC, three of which involve consumer protection statutes that explicitly exempt regulated entities, like Defendants, from liability. (SAC ¶¶ 287–321.) Indeed, each statute expressly carves out regulated conduct from its reach. MCL § 445.904(1)(a) (exempting "[a] transaction or conduct specifically authorized under laws administered by a regulatory board"); R.I. § 6–13.1–4(a) (exempting "actions or transactions permitted under laws administered by the department of business regulation or other regulatory body"); NRS § 598.0955 (1)(a) (exempting "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state or local governmental agency"). And this carveout has been expressly applied in the gaming context. *Kraft v. Detroit Ent., L.L.C.*, 261 Mich. App. 534, 541–42 (2004) ("[W]e conclude that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

the general conduct involved in this case—the operation of slot machines—is regulated and was specifically authorized by the MGCB. . . . Therefore, . . . defendants are exempt from plaintiff's MCPA claims."); *see also* Nev. Gam. R. 14.030 ("A manufacturer or distributor shall not distribute a gaming device in Nevada . . . unless it has received a recommendation for approval from the Board . . . .").

By targeting conduct expressly governed by gaming regulators—and invoking statutes that exempt such regulated activity—Plaintiffs' expanded SAC confirms that this dispute falls squarely within the NGCB's exclusive purview. *cf. Fortunet, Inc. v. Gametech Arizona Corp.*, No. 2:06-CV-00393-PMP-PAL, 2008 WL 5083812, at *6 (D. Nev. Nov. 26, 2008) ("To the extent [defendant] has evaded Nevada's gaming law requirements, Nevada's Gaming Control Board and Commission are well suited to address any such violations."); *Sports Form, Inc. v. Leroy's Horse & Sports Place*, 823 P.2d 901, 904 (Nev. 1992) (noting, "the legislature vested authority for enforcement of Chapter 463 in the Nevada Gaming Control Board and the Nevada Gaming Commission. Therefore, absent express language to the contrary, the legislative scheme of Chapter 463 precludes a private cause of action.").

Because these new allegations were not available when Defendants filed their original motion, reconsideration is warranted. *Cf. Seegert v. Rexall Sundown, Inc.*, No. 3:17-cv-1243-JAH-JLB, 2018 WL 2966855, at *4 (S.D. Cal. June 13, 2018) (finding "upon reconsideration of Ninth Circuit case law, and in light of Plaintiff's new allegations . . . the Court finds it appropriate to change course.").

## B. Alternatively, the Court Should Certify the Jurisdictional Issue

Should the Court decline to revisit or reconsider its jurisdictional Order, Defendants respectfully request that the Court certify the controlling and dispositive issue of jurisdiction to the Nevada Supreme Court.

As this Court has explained, "the Nevada Supreme Court may answer questions of law certified to it by a United States District Court 'which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no

5

controlling precedent in the decisions of the Supreme Court or Court of Appeals of this state.'" *Dep't of Emp. Training*, 2025 WL 1826682, at *4 (quoting Nev. R. App. P. 5(a)). In determining whether to certify a question to the Nevada Supreme Court, federal courts consider: "(1) whether the question presents important public policy ramifications yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) the spirit of comity and federalism." *Id*. (citation modified).

Here, to the extent that this Court finds that *Friedlander* is not applicable to this case, the following controlling and dispositive question should be certified to the Nevada Supreme Court:

> Under NRS §§ 463.361 & 463.362, does the NGCB have exclusive jurisdiction over claims asserting that players were deprived of the monies they would have won had it not been for the defendants' alleged deception?

This question is significant because it presents a substantial issue of first impression[1] that would have significant ramifications for Nevada's gaming industry. As the legislature has provided, "[t]he gaming industry is vitally important to the economy of the State and the general welfare of the inhabitants." NRS § 463.0129; *cf. Conner v. Harrah's Operating Co., Inc.*, No. 3:08-CV-00633-BES-RAM, 2009 WL 10710348, at *7 (D. Nev. July 7, 2009) ("The Agents argue that strong public policy considerations related to the economic success of the gaming industry and the State of Nevada are associated with the enforcement of Nevada's Gaming Control Act. This Court agrees."); *State Gaming Control Bd. v. Eighth Jud. Dist. Ct. In & For Clark Cnty.*, 409 P.2d 974, 975 (Nev. 1966) ("Any effort to obstruct the orderly administrative process provided by the Gaming Control Act casts serious doubt upon the ability of Nevada to control the privileged enterprise of gaming."). These public policy arguments strongly favor certification. *See Malloy v. Amazon.com Servs., LLC*, No. 2:22-cv-00286-ART-MDC, 2024 WL 3276274, at *3 (D. Nev. July 1, 2024) ("Given the public policy ramifications and broad application of a determination on this question to Nevada workers and employers, the Court finds that certification of this question to

---

[1] Again, Defendants assert that *Friedlander* applies to this case. But to the extent that the Court finds otherwise, Defendants submit that this is an issue of first impression.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

the Nevada Supreme Court is appropriate.").

This question is also dispositive, and no relevant facts are in dispute. Should this Court find that there is no subject matter jurisdiction, Plaintiffs' SAC would be dismissed in its entirety. *Dep't of Emp. Training*, 2025 WL 1826682, at *4 (this Court certifying "an unsettled question of state law which is entirely dispositive of this case" where "no relevant facts are in dispute because all allegations are to be taken as true at this stage of the litigation"). To the extent that this Court denies the motion for reconsideration, it should certify this dispositive issue to the Nevada Supreme Court.

## IV.    CONCLUSION

Defendants respectfully request that the Court reconsider its Order denying Defendants' motion to dismiss for lack of subject matter jurisdiction, or alternatively, certify this issue to the Nevada Supreme Court.

DATED: June 2, 2026

Respectfully submitted,

/s/ *Paul G. Karlsgodt*
DAVID A. CARROLL (NSB #7643)
Email: dcarroll@rrsc-law.com
ANTHONY J. DIRAIMONDO (NSB #10875)
Email: adiraimondo@rrsc-law.com
ROBERT E. OPDYKE (NSB #12841)
Email: ropdyke@rrsc-law.com
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099

*Attorneys for Defendants IGT, MGM Grand Detroit, LLC, Blue Tarp reDevelopment, LLC, UTGR, LLC, NP Palace LLC, Coast Hotels and Casinos, Inc., and The Cannery Hotel and Casino, LLC*

PAUL G. KARLSGODT  (*Pro hac vice*)
Email: pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California St., Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600

*Attorney for Defendant IGT*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

7

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed via this Court's CM/ECF system, which system will cause the forgoing to be electronically served upon the following:

David C. O'Mara
THE O'MARA LAW FIRM, P.C.
311 E. Liberty St
Reno, NV  89501
775.323.1321
david@omaralaw.net

E. Powell Miller, *pro hac vice*
Gregory A. Mitchell, pro hac vice
THE MILLER LAW FIRM
950 W. University Drive, Suite 300
Rochester, MI  48307
248.841.2200
epm@millerlawpc.com

Frank S. Hedin, *pro hac vice*
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, FL  33131
305.357.2107
fhedin@hedinllp.com

Tyler K. Somes, *pro hac vice*
HEDIN LLP
1100 15th Street NW, Suite 04-108
Washington, DC  20005
202.900.3331
tsomes@hedinllp.com

Dated: June 2, 2026

*/s/ Paul G. Karlsgodt*
Paul G. Karlsgodt

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

8