DAVID A. CARROLL (NSB #7643)
Email: dcarroll@rrsc-law.com
ANTHONY J. DIRAIMONDO (NSB #10875)
Email: adiraimondo@rrsc-law.com
ROBERT E. OPDYKE (NSB #12841)
Email: ropdyke@rrsc-law.com
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099

*Attorneys for Defendants IGT; MGM Grand Detroit, LLC;*
*Blue Tarp reDevelopment, LLC; UTGR, LLC; NP Palace LLC;*
*Coast Hotels and Casinos, Inc.; and The Cannery Hotel and Casino, LLC*

PAUL G. KARLSGODT (*Pro hac vice*)
Email: pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California St., Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600

*Attorneys for Defendant IGT*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARLOTTE BOWNES; JOSEPH LAGRECA; JESSICA NAUMANN; and FERMIN OROPEZA PALACIOS, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>IGT; MGM GRAND DETROIT LLC; BLUE TARP REDEVELOPMENT, LLC; UTGR, LLC; NP PALACE LLC; COAST HOTELS AND CASINOS, INC.; THE CANNERY HOTEL AND CASINO, LLC,<br><br>              Defendants. | Case No.: 3:24-cv-00528-ART-CSD<br><br>**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>*ORAL ARGUMENT REQUESTED – LR 78-1* |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Defendants IGT; MGM Grand Detroit LLC; Blue Tarp reDevelopment, LLC; UTGR, LLC; NP Palace LLC; Coast Hotels and Casinos, Inc.; and The Cannery Hotel and Casino, LLC, (collectively, "Defendants") hereby jointly move to dismiss Plaintiffs' Second Amended Class Action Complaint (ECF No. 55.)

Defendants base this motion on Fed. R. Civ. P. 12(b)(6), the following memorandum of points and authorities, all pleadings and other papers on file with the Court, and any oral argument that the Court may entertain.

DATED: June 2, 2026

Respectfully submitted,

/s/ *Paul G. Karlsgodt*

DAVID A. CARROLL (NSB #7643)
Email: dcarroll@rrsc-law.com
ANTHONY J. DIRAIMONDO (NSB #10875)
Email: adiraimondo@rrsc-law.com
ROBERT E. OPDYKE (NSB #12841)
Email: ropdyke@rrsc-law.com
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099

*Attorneys for Defendants IGT, MGM Grand Detroit, LLC, Blue Tarp reDevelopment, LLC, UTGR, LLC, NP Palace LLC, Coast Hotels and Casinos, Inc., and The Cannery Hotel and Casino, LLC*

PAUL G. KARLSGODT  (*Pro hac vice*)
Email: pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California St., Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600

*Attorney for Defendant IGT*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

In their Second Amended Class Action Complaint ("SAC"), Plaintiffs assert ten different claims each attempting to recast routine gambling losses as fraud. Specifically, Plaintiffs claim that Defendants' Wheel of Fortune ("WOF") game—a game that has been fully tested and approved by the state gaming regulators—misled them into believing the game offered equal odds of winning. Yet the very materials that Plaintiffs cite to and rely on in their SAC expressly disclose the gaming odds. And the governing regulatory framework—of which Plaintiffs are charged with constructive knowledge—openly permits the very features that Plaintiffs claim were hidden. Far from being misled, Plaintiffs own allegations make clear they were fully informed of the very information they now label as deceptive.

Aside from these legal defects, the SAC also fails to meet the pleading standards. This is now Plaintiffs' third attempt to plead viable claims. After dismissing the First Amended Class Action Complaint ("FAC"), the Court provided clear guidance regarding the deficiencies in Plaintiffs' pleading. Yet the SAC does not cure those defects. Instead, Plaintiffs repeat the same conclusory allegations, continue to rely on improper group pleading, and double down on a scattershot collection of materials—many of which post-date this action or affirmatively defeat their claims. Worse still, Plaintiffs improperly expand the case by asserting new causes of action, none of which are viable as a matter of law or plausibly alleged. These claims further underscore Plaintiffs' effort to retrofit legal theories to an unfavorable gaming outcome rather than plead actionable misconduct.

Because Plaintiffs' claims are both legally defective and implausibly pled, and because further amendment would be futile, this Court should dismiss the SAC with prejudice.

## II.   BACKGROUND

Plaintiffs' SAC alleges that Defendants' WOF game is "rigged" because Plaintiffs were allegedly misled into believing that players have equal odds when the game's outcomes are actually determined by secret "internal" computers that apply unequal odds. (SAC ¶¶ 5, 27, 42–

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

43, 47, 49, 50–51, 75, 78, 110, 218–19, 229, 291.) As a result, Plaintiffs complain that Defendants have defrauded them and contend that, had they "known the truth," they "would not have risked money playing the devices." (*Id.* ¶¶ 144, 149, 154, 159, 243, 248.)

Plaintiffs filed the instant case seeking to represent a putative nationwide class and five putative subclasses. (*Id.* ¶¶ 160–65) Although Plaintiffs assert claims of fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), unjust enrichment, negligent misrepresentation, and violations of consumer protection acts (*id.* ¶¶ 174–321), as explained below, Plaintiffs still cannot state a single viable claim.

### A. Plaintiffs' FAC

On March 18, 2026, this Court granted Defendants' motion to dismiss. (ECF No. 54.) As this Court explained, Plaintiffs' RICO claims failed because Plaintiffs failed to plead reliance and failed to show "anything more than routine commercial relationships among Defendants." (*Id.* at 10:19–22.) The Court also found that Plaintiffs failed to "allege [the] 'longevity necessary to accomplish the [alleged RICO] purpose.'" (*Id.* at 10:26–28.) Further, Plaintiffs failed to allege proximate causation or any facts supporting a "reasonable inference that Plaintiffs were actually harmed by the use of investment of racketeering income." (*Id.* at 12:3–6.)

Regarding Plaintiffs' fraud and negligent misrepresentation claims, the Court found that Plaintiffs engaged in improper group pleading and failed to allege "which Casino Defendants conveyed fraudulent information, when the information was conveyed, or where." (*Id.* at 15:25–28.) Additionally, Plaintiffs' omission-based claims were insufficient because there was "no evidence that Casino Defendants or IGT had a special relationship with Plaintiffs such that disclosure was mandated." (*Id.* at 16:21–24.) Moreover, none of Plaintiffs' claims came close to meeting the heightened pleading standard dictated by Rule 9. (*Id.* at 11:1–3, 13:15–21, 15:22–16:5.)

The unjust enrichment claims were similarly deficient. In dismissing them, this Court held that Plaintiffs failed to provide substantive factual allegations explaining why legal remedies would "not make them whole" and failed to allege facts entitling them to relief. (*Id.* at 14:13–15.)

The Court dismissed all asserted claims, granting Plaintiffs the opportunity to amend.

Plaintiffs have now amended their complaint for a third time. Yet for the reasons described below, their claims remain entirely deficient.

### B. Plaintiffs' Current Allegations

With respect to their RICO claims, Plaintiffs add allegations that "Defendants' association-in-fact enterprise is demonstrated by their coordinated design, deployment, and operation of [WOF]-themed gaming devices within Wide Area Progressive jackpot systems that span multiple casino properties." (SAC ¶ 57.) Plaintiffs also add allegations that the Defendants (1) shared common jackpot pools, promotional mechanisms, and liabilities, (2) coordinated system design, a financial structure, cross-promotion of WOF gaming devices, and (3) entered into leasing agreements. (*Id.* ¶¶ 180–81, 213–19, 223–29.)

Plaintiffs' SAC also adds allegations focused on Defendants' purported promotions, including various press releases, blog posts, web pages, SEC filings, and advertisements that allegedly represented that the WOF game was "fair," "reliable," and governed by "luck." (*Id.* ¶ 83 n.36; *id.* ¶ 84 nn.37–39; *id.* ¶ 86 n.40; *id.* ¶ 90 n.42; *id.* ¶ 91 n.43; *id.* ¶ 92 n.44; *id.* ¶ 94 n.45; *id.* ¶ 96 nn.46–48; *id.* ¶ 98 nn.49–50; *id.* ¶ 99 nn.51–52; *id.* ¶ 100 nn.53–54; *id.* ¶ 103 n.55; *id.* ¶¶ 254, 256, 262, 274, 276–78.) Plaintiffs otherwise continue to rely entirely on group allegations and fail to allege any type of reliance on the purported promotions. (*Id.* ¶¶ 93, 95, 101–03, 105, 111–20, 181, 186–87, 190–94, 242, 245–49.)

Plaintiffs' SAC fails (again) to satisfy the heightened pleading standard of Rule 9. (*Id.* ¶¶ 174–262, 272–321.) As with their prior allegations, Plaintiffs do not allege which Plaintiffs read any of the alleged misrepresentations, which ones they read, when they read them, or if it was before they played the WOF game. (*See generally* SAC.) Moreover, even if they had done so, their claims would still fail because the very materials on which they rely expressly disclose the unequal odds they claim were concealed. (*Id.* ¶ 84 & n.37; *id.* ¶ 86 & n.40.)

Plaintiffs' unjust enrichment claim remains similarly deficient. Plaintiffs add a conclusory sentence asserting that they are pleading this claim "in the alternative," and allegations that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

"Defendants received monies to which they had no legal right and it would be inequitable for Defendants to retain that benefit." (*Id.* ¶¶ 264, 269, 271.)

The other changes in the SAC are not new factual allegations but rather new legal causes of action in the form of four new consumer protection claims. (*Id.* ¶¶ 287–321.)

Plaintiffs have now had two opportunities to amend their complaint, with the benefit of the Court's explicit guidance, yet have failed to cure the identified deficiencies. This Court should dismiss the action with prejudice.

### III.   ARGUMENT[1]

#### A.  Plaintiffs' Claims Fail as a Matter of Law

In their SAC, Plaintiffs contend that they were deceived about the operation of the WOF game in two respects. They allege that they were misled into believing (1) that there are equal odds across all segments of the game's wheel, and (2) that the wheel was operated by "physics," when the game's outcomes are actually determined by secret internal computers. Both theories fail as a matter of law.

#### 1.  Plaintiffs' Equal-Odds Theory Is Legally Deficient

Plaintiffs claim that, based on Defendants' alleged misrepresentations, they believed that the wheel segments on the WOF game were governed by equal probabilities (SAC ¶¶ 4, 6), yet the materials cited in Plaintiffs' SAC—the very materials that they claim misled them—expressly disclose that there is ___*not*___ an equal probability.

As the Ninth Circuit has held, when a plaintiff includes contradictory materials in his complaint, he can effectively "plead himself out of a claim." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Tello v. Bank of Am. N.A.*, No. 2:12-CV-01040-GMN-NJK, 2014 WL 99299, at *4 (D. Nev. Jan. 3, 2014) (dismissing claim with prejudice where "the [] documents provided to the Court appear to contradict Plaintiff's allegation"); *Mehta v. Victoria*

[1] Just as before, Defendants apply Nevada law to Plaintiffs' claims unless otherwise stated. (ECF No. 40 at 4 n.3); *see Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 557 (9th Cir. 2020). Should Plaintiffs dispute the application of Nevada law, Defendants reserve the right to submit additional briefing on this issue.

Baker & Hostetler LLP
Attorneys at Law
Denver

*Partners*, No. 2:21-cv-01493-CDS-VCF, 2023 WL 205758, at \*5–6 (D. Nev. Jan. 17, 2023) (dismissing fraud claim concerning casino "free play," where a photograph included in the complaint explicitly contradicted plaintiff's allegations); *Wimberly v. Reliance Standard Life Ins. Co.*, No. 2:11-CV-00430-PMP-LRL, 2011 WL 2847583, at \*4 (D. Nev. July 14, 2011) (dismissing with prejudice where "Plaintiff's own document shows Reliance in fact had access to the information that Tutor allegedly failed to provide").

Here, Plaintiffs claim that Defendants misrepresented that each wheel segment had equal odds. (SAC ¶¶ 4, 6.) They claim that Defendants "actively cultivate[d] this perception through coordinated marketing materials and public-facing descriptions." (*Id.* ¶ 84 & n.37 (citing and quoting Exhibit 1); *see also id.* ¶ 86 & n.40 (citing and quoting Exhibit 2); *id.* ¶¶ 254, 276 (quoting Exhibit 1).)[2] Yet the very materials that Plaintiffs cite expressly disclose that the wheel does ***not*** present equal odds. Ex. 1 (The Big Six Wheel: Rules and Strategies) at 2; Ex. 2 (Gaming Handbook) at 5. As those materials state, "[i]t's best to steer clear of [wheel] sections with extremely low odds . . . . While the potential payout may tempt you, the chances of the wheel landing on that specific section are significantly lower, giving the casino a considerable advantage." Ex. 1 (The Big Six Wheel: Rules and Strategies) at 2; *see also id.* ("Instead, focus on bets with better odds that still offer decent payouts."); *id.* ("[T]he house always maintains an edge. The house edge can vary but is generally higher compared to other casino games."); *id.* ("Payout odds range from even money to as high as 40 to 1, depending on the chosen section."); Ex. 2 (Gaming Handbook) at 5 ("A bet on the MGM or GRAND logo pays 45 to 1."). By relying on materials that disclose the very information they claim was concealed, Plaintiffs' claims fail as a matter of law. This Court should dismiss them with prejudice.

### 2. Plaintiffs' Secret Computer Theory Also Fails as a Matter of Law

Plaintiffs contend that they were never told that the outcome of their play would be determined by an internal computer or random number generator ("RNG"). This theory also fails.

---

[2] Defendants are contemporaneously filing a request for judicial notice with this motion. The request will encompass Exhibits 1–2, both of which are documents whose contents are alleged in the complaint. (*Id.* ¶ 84 & n.37; *id.* ¶ 86 & n.40.)

As courts have long recognized, the public has constructive knowledge of the law. *Sengel v. IGT*, 2 P.3d 258, 262 (Nev. 2000). It is for this reason that a plaintiff cannot state a claim premised on an alleged failure to understand or appreciate the law. *U.S. Bank Nat'l Ass'n as Tr. for Benefit of HarborView 2005-08 v. Vistas Homeowners Ass'n*, 432 P.3d 191 (Nev. 2018) ("[W]e must presume that any such bidders also were aware of NRS 116.1104, such that they were not misled"); *Demaree v. Wal-Mart Stores, Inc.*, 511 F. App'x 660, 661–62 (9th Cir. 2013) ("This is not a cognizable consumer fraud theory, because Plaintiffs are presumed to know the law.").

The *Sengel* case directly illustrates this point. In that case, the plaintiff complained about "[n]otice of [the] random number generator." 2 P.3d at 262 . Specifically, the plaintiff argued that the casino had "a secret policy whereby a visual jackpot that is not generated by a random number generator is not a valid jackpot." *Id*. The court rejected this argument. *Id.* It found that the Nevada Gaming Regulations explicitly allow for random number generators and therefore, the Plaintiff "had constructive knowledge when he played the machine that the game result was to be determined by a random selection process." *Id.* at 262–63 (citation modified) (finding that "[b]ecause the public has constructive knowledge of [gaming] regulation[s], which [are] state law," a player has constructive knowledge of how a slot machine determines outcomes).

In this case, consistent with *Sengel*, the pertinent gaming regulations openly—and repeatedly—allow electronic gaming devices to use RNGs or equivalent computerized processes. Michigan regulations mandate that an electronic gaming device "must be equipped with a RNG to make the selection process." Mich. Admin. Code R. 432.1839(10)(b). Nevada likewise regulates "[r]andom selection process[es] and random number generator[s]," and defines games of chance as those in which "randomness determines all outcomes of the game." Nev. Gaming Comm'n Reg. 14 TS § 1.400; Nev. Gaming Comm'n Reg. § 14.010(10); *see also* Nev. Gaming Comm'n Reg. § 14.235(1) (providing games must "[t]heoretically pay out a mathematically demonstrable percentage of all amounts wagered"). Massachusetts' regulations similarly provide that outcomes must be determined by "values selected by an approved RNG." 205 Mass. Code Regs. § 143.01; Gaming Laboratories International, LLC, *Standard GLI-11: Gaming Devices* (Sept. 21, 2016), §

Baker & Hostetler LLP
Attorneys at Law
Denver

6

4.7.2. And Rhode Island defines video lottery terminals (VLTs) as electronic machines using microprocessors. Rhode Island Lottery Rules & Regulations § 20.9(A)(15).

As these regulations demonstrate, Plaintiffs cannot plausibly allege that the use of internal computers or RNGs was concealed. The regulatory framework governing slot machines affirmatively allows RNGs and publicly discloses their role in determining outcomes. Plaintiffs' theory—premised on secret "internal computers"—fails as a matter of law.

### B. Plaintiffs Still Fail to Plead Plausible Claims

Plaintiffs' claims also fail because they are insufficiently pled. To survive dismissal, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor does "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law . . . are insufficient . . . ."). To make the requisite showing, a plaintiff must allege facts that demonstrate a "plausible" basis for relief. *Twombly*, 550 U.S. at 556. A claim is "plausible" only when the factual allegations allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Despite the benefit of this Court's prior dismissal order, Plaintiffs have yet again failed to demonstrate a "plausible" basis for relief as to any of their claims. As such, this Court should dismiss this case with prejudice. *Ehmann*, *v. Desert Palace, LLC*, No. 2:19-cv-01199-APG-BNW, 2021 WL 4395044, at *3 (D. Nev. Sept. 24, 2021) (dismissing with prejudice where plaintiff "failed to cure" deficiencies).

### 1. Plaintiffs Still Fail to State a Claim Under RICO (Counts I, II, and III)

To state a RICO claim, Plaintiffs must adequately allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citation modified) (citing 18 U.S.C. § 1964(c).). As this Court previously recognized, Plaintiffs' RICO claims are governed by Rule 9(b)'s heightened pleading standard. (ECF No. 54 at 8:5–7 (citing *Lancaster Cmty. Hosp. v.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).) "Rule 9(b) requires that the circumstances constituting fraud are stated with particularity, including the time, place, and specific content of the false representation." (*Id.* at 8:8–12.) Importantly, this Court also emphasized that "Rule 9(b) does not allow a complaint to 'merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant.'" (*Id.* at 8:11–14 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)).)

As explained below, Plaintiffs' claims fall far short of this standard. Specifically, Plaintiffs' claims fail to adequately plead: (1) statutory standing; (2) the existence of an enterprise; (3) a pattern of racketeering activity; and (4) any viable claims under Section 1962(a) or (d).

i.   <u>Plaintiffs still lack statutory standing to assert a RICO claim.</u>

As this Court has previously explained, to "allege standing under RICO, a 'plaintiff must show (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was "by reason of" the RICO violation, which requires the plaintiff to establish proximate causation.'" (*Id*. at 8:19–23 (quoting *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008)).) "An injury by reason of a RICO violation requires Plaintiffs to show that a RICO predicate offense not only was a but for cause of [their] injury, but was the proximate cause as well." (*Id.* at 8:23–26 (citation modified).) In evaluating proximate cause, courts ask "whether the alleged violation led directly to the plaintiff's injuries." (*Id.* at 8:27–9:2 (citation modified).) In order to satisfy this question, plaintiffs "must allege that 'someone relied on the defendant's misrepresentation.'" (*Id.* at 9:25–10:1 (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649, 658 (2008))); *see also Poulos v. Caesars World, Inc.*, No. CV-S-94-1126-RLH-RJJ, 2002 WL 1991180, at *9 (D. Nev. June 25, 2002) ("[T]o prove a civil RICO claim predicated on mail or wire fraud, a plaintiff must demonstrate reliance . . . .").

In dismissing the FAC, this Court held that Plaintiffs failed to allege that any party "relied on" the alleged misrepresentations and thus, "Plaintiffs fail[ed] to allege a causal connection between the alleged predicate acts, and Plaintiffs' harm." (ECF No. 54 at 10:1–5.) Yet despite this

8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Court's clear guidance, Plaintiffs still fail to adequately plead reliance, instead offering only a conclusory recitation of the element. (SAC ¶¶ 186–87, 190–94, 242.)[3] This barebones allegation of reliance—without any facts stating that the Plaintiffs actually read the alleged misrepresentations or when—is fatally insufficient. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1155 (9th Cir. 2005) (requiring that plaintiff actually read or heard the allege misrepresentation); *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1175 (C.D. Cal. 2014) (finding claim insufficient "absent an express allegation that Girard viewed the misleading content").

Plaintiffs' reliance theory is further undermined by their scattershot collection of press releases, blogs, videos, and other advertising materials from disparate time periods, many of which were published after the Plaintiffs allegedly played the WOF game. (*Compare* SAC ¶ 109 & n.57 (relying on 2024 video), *with id.* ¶¶ 141, 146, 151 (claiming three of the class representatives played the game in 2021 and 2022).) Once again, Plaintiffs' theory is defeated by the very record they place before the Court. *Magee v. Gen. Motors LLC*, No. EDCV 23-cv-1715 JGB (SSCx), 2024 WL 1829692, at *6 (C.D. Cal. Jan. 26, 2024) ("[I]t is impossible—based on Plaintiff's own FAC—that he could have relied upon 2020 marketing materials prior to his September 2017 vehicle purchase. The Court is troubled by this apparent falsity in the FAC." (citation modified)).[4]

Because Plaintiffs fail to "allege a causal connection between the alleged predicate acts, and Plaintiffs' harm" (ECF No. 54 at 10:3–5), Plaintiffs' RICO claims should be dismissed.

### ii. Plaintiffs do not adequately allege an "enterprise".

To plead the existence of an enterprise under civil RICO, a plaintiff must allege with specificity that the enterprise has: "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Boyle v. U.S.*, 556 U.S. 938, 946 (2009)). At a minimum, a plaintiff must allege plausible facts that defendants "associated together for a common purpose of engaging in a course of conduct . . . [and allege] evidence of an ongoing organization,

---

[3] Notably, Plaintiffs fail to even mention reliance with respect to Count 3. (*Id.* ¶¶ 245–49.)

[4] Further, as explained above, the materials that Plaintiffs allege to have relied upon expressly **disclose** the very facts that Plaintiffs claim were hidden from them. *See supra* Section III(A)(1).

formal or informal, and evidence that the various associates function as a continuing unit." *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015) (citation modified). Where, as here, companies engage in business transactions that are "facially legitimate," a "significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Props.*, 751 F.3d at 997–98, 1000 (affirming dismissal of RICO claim where allegations did not exclude "the alternative explanation that the transactions were merely a group of business deals" that cost parties money). As this Court has previously found, "very few Courts have treated allegations of routine commercial relationships as sufficient to support a RICO claim." (ECF No. 54 at 10:23–26 (citation modified) (quoting *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-cv-01425 JGB (KKx), 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015)).)

This Court applied this reasoning in dismissing Plaintiffs' FAC. Specifically, this Court held that "Plaintiffs' allegations fail to show anything more than routine commercial relationships among Defendants, with Casino Defendants buying [WOF]-themed gaming devices from IGT, and Casino Defendants paying for those devices." (*Id.* at 10:19–22.) The Court also found that because Plaintiffs failed to allege "the length of the relationship between Defendants," they "therefore fail[ed] to allege the 'longevity necessary to accomplish the purpose.'" (*Id*. at 10:26–28 (citation omitted).) Yet again, Plaintiffs fail to correct these deficiencies.

The SAC makes only conclusory allegations that "Defendants' association-in-fact enterprise is demonstrated by their coordinated design, deployment, and operation of [WOF]-themed gaming devices within Wide Area Progressive jackpot systems that span multiple casino properties." (SAC ¶ 57.) Plaintiffs vaguely allege that the Defendants (1) shared common jackpot pools, promotional mechanisms, and liabilities, (2) coordinated system design, a financial structure, marketing, cross-promotion of WOF gaming devices, and (3) entered into leasing agreements. (*Id.* ¶¶ 180–81, 213–19, 223–29.)

Once again, "Plaintiffs' allegations fail to show anything more than routine commercial relationships among Defendants" (ECF No. 54 at 10:19–22), and their SAC falls far short of pleading the "significant level of factual specificity" that would allow for a reasonable inference

of a fraudulent scheme. *Eclectic Props.*, 751 F.3d at 997–98; *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("[L]iability depends on showing that the defendants conducted or participated in the enterprise's affairs, not just their *own* affairs." (emphasis omitted) (citation modified)); *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999) (finding it apparent that the relationship between online casino and defendants was merely routine contractual relationship). Indeed, Plaintiffs appear to be challenging the lawfulness of Wide Area Progressive ("WAP") jackpot systems that are routinely implemented across casinos and have never been found to be unlawful. Nev. Gaming Comm'n Reg. §§ 5.112, 5.180, 14.045 (regulating inter-casino progressive jackpot systems).

The SAC's deficiencies are compounded by Plaintiffs' repeated reliance on allegations made "[u]pon information and belief," (SAC ¶¶ 52, 70, 89, 91, 211, 218, 222, 224, 226, 229), which are insufficient to state a RICO claim. *Yagman v. Gabbert*, 684 F. App'x. 625, 627 (9th Cir. 2017) (finding no error in dismissing RICO claim with prejudice when plaintiff alleged "'[o]n information and belief,' that the RICO enterprise's activities have occurred on many occasions 'over the past 10 years,' constituting 'at least three separate acts.'" (citation omitted)).

Further problematic is the SAC lacks any specific facts setting forth how each Defendant contributed to the alleged enterprise. *See Lancaster Cmty. Hosp.*, 940 F.2d at 405 (finding plaintiffs must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme"); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("[N]one of the RICO allegations identifies the role of the individual defendants in the alleged fraudulent scheme."). Nor does the SAC allege "who directed the enterprise, how decisions were made, how Defendants coordinated across their separate roles, how the alleged members communicated to advance a shared racketeering objective, or how proceeds or benefits were distributed among them." *Lambert v. Givens*, No. 2:25-cv-00662-AKB, 2026 WL 1363070, at *5 (D. Idaho May 15, 2026); *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1254 (N.D. Cal. 2014) (finding "no information as to the form or structure of that enterprise, the ways in which decisions are made in the enterprise, or even the hierarchy of the alleged actors in the enterprise").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

To the contrary, nearly all of the allegations related to the alleged enterprise lump Defendants together with broad allegations of misconduct by referring either to "Defendants" or "Casino Defendants." (*See, e.g.*, SAC ¶ 180 ("Defendants' enterprise operates collectively through, . . . interconnected [WAP] systems that pool player wagers across multiple casino locations into shared progressive jackpot funds."); *id.* ¶ 213 ("Defendants' enterprise is further evidenced by pooled income . . . .").) Plaintiffs' failure to differentiate among the Defendants in the alleged enterprise and failure to plead actions by Defendants in furtherance of the alleged RICO scheme defeats their claims. *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (affirming dismissal where "plaintiffs lump together the defendants"); *Donovan v. Flamingo Palms Villas, LLC*, No. 2:08-cv-01675-RCJ-RJJ, 2009 WL 10693913, at *11 (D. Nev. June 23, 2009) ("The [FAC] also fails to allege with sufficient specificity the identities of the parties to each [RICO] misrepresentation; instead, it lumps multiple Defendants together . . . .").

Lastly, Plaintiffs' vague allegation, based "[u]pon information and belief" that "Defendants" have engaged in the alleged enterprise "for more than two decades," (SAC ¶¶ 70, 211 (emphasis omitted)), is insufficient to plead longevity. *Yagman*, 684 F. App'x at 627 (affirming dismissal of allegations that "on information and belief," the "RICO enterprise's activities have occurred on many occasions over the past 10 years" (citation modified)); *Lambert*, 2026 WL 1363070, at *5 (finding "the mere passage of time does not establish an association-in-fact enterprise" and "[t]he complaint must allege that Defendants functioned as a continuing unit long enough to accomplish the enterprise's purpose" (citation omitted)); *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) ("[P]laintiffs merely allege without any elaboration that defendants engaged in a 'continuing and related pattern of racketeering activity, which began as early as September 27, 2011 . . . .'" (citation modified)). This Court should dismiss the SAC for this reason as well.

iii.    <u>The SAC alleges no pattern of racketeering activity.</u>

Racketeering activity requires plausibly pled *criminal* predicate acts, which in this case are alleged to be mail and wire fraud. The mail and wire fraud statutes are identical except for the

method used to disseminate the fraud and contain three elements: existence of a scheme to defraud, use of the mails or wires in furtherance of that scheme, and specific intent to defraud. *See U.S. v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013); *Eclectic Props.*, 751 F.3d at 997.

A "'pattern of racketeering activity' consists of at least two acts of racketeering activity," such as mail or wire fraud, within a ten-month period. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1469 (9th Cir. 1987) (quoting 18 U.S.C. § 1961(5)). To constitute a pattern, a plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity," and are not merely "sporadic activity." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis omitted). "Racketeering predicates are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *U.S. v. Freeman*, 6 F.3d 586, 596 (9th Cir. 1993) (quoting *H.J., Inc*., 492 U.S. at 240). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the 'pattern'] requirement." *H.J., Inc*., 492 U.S. at 242. Additionally, "[w]here RICO is asserted against multiple defendants, a plaintiff must allege *at least two* predicate acts by each defendant." *In re WellPoint, Inc. Out–of–Network UCR Rates Litig*., 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012) (citation modified) (emphasis added).

Plaintiffs' improper group allegations do not meet these standards. The primary focus of Plaintiffs' allegations of mail and wire fraud relate to purported promotions by the collective group of "Defendants." These promotions include "visual representations of the machines and the '[WOF]' brand name across Defendants' websites, social media accounts, and in advertising materials distributed via mail solicitations, print advertisements, and magazine publications." (SAC ¶ 111.) Plaintiffs' SAC adds the following examples:

- Numerous press releases by IGT celebrating jackpot winners. (*Id.* ¶ 83 n.36; *id.* ¶ 94 n.45; *id.* ¶ 96 nn.46–48; *id.* ¶ 98 nn.49–50; *id.* ¶ 99 nn.51–52; *id.*¶ 100 nn.53–54.)

- A 2023 blog post published by BetMGM and an MGM Grand Detroit Gaming Guide, both of which expressly discloses the gaming odds. (*Id.* ¶ 84 n.37; *id.*¶ 86 n.40.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

13

- Websites from various non-defendants, which identify various games and casinos. (*Id.* ¶ 85 nn.38–39; *id.* ¶ 91 n.43; *id.* ¶ 103 n.55.)

- International Game Technology, PLC's and MGM Resorts International's SEC filings, providing information on each entity's business operations and financials. (*Id.* ¶ 90 n.42; *id.* ¶ 92 n.44.)

Plaintiffs otherwise rely on the same promotional materials alleged in their FAC:

- A non-functional link to a 2015 press release purportedly issued by IGT and a 2021 Las Vegas Weekly article that refers to the WOF television show co-hosts appearing at the Global Gaming Expo. (*Id.* ¶ 110 n.58; *id.* ¶ 43 n.6.)

- A 30-second YouTube video published by IGT in 2018 that does not contain a video of the WOF game, but instead includes only a carnival-wheel visual without any voiceover or oral statements whatsoever. (*Id.* ¶ 107 n.56.)

- A 90-second IGT product demo video published in 2024. (*Id.* ¶ 109 n.57.)

- A 2016 Facebook post by MGM Detroit celebrating a WOF winner. (*Id.* ¶ 114 n.59.)

- A website seemingly belonging to non–defendant, Bally's, that allegedly promotes WOF along with five other "fan favorite" games during an unspecified period. (*Id.*)

- A 2024 PR Newswire article discussing BetMGM sponsoring a "Nightly Progressive Jackpot." (*Id.* ¶ 44 n.7.)

- A 2024 IGT press release discussing IGT adding WOF Slots to the video poker, electronic table games, and video lottery terminals product categories. (*Id.* ¶ 45 n.8.)

- A 2021 Las Vegas Review-Journal audio reading discussing the WOF game variations and sounds. (*Id.* ¶ 41 n.4.)

There are no allegations of a fraudulent statement in any of these isolated social media posts and videos published sporadically over an eleven-year period, many of which are published by non–defendants, and twelve of which celebrate patrons winning significant jackpots at a WOF game (which is inconsistent with the allegations of a fraudulent scheme to avoid large payouts). *See Ehmann*, 2021 WL 4395044, at *2 (rejecting statements made by non–parties). Moreover, the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

materials Plaintiffs rely on ***expressly disclose*** that there are unequal odds of payment. *See supra* Section III(A)(1). Further, as noted above, there are no allegations that Plaintiffs viewed any of the alleged misrepresentations before playing. *See Rivera*, 395 F.3d at 1155; *Boris*, 35 F. Supp. 3d at 1175.

The remainder of Plaintiffs' allegations of criminal predicate acts consists of insufficient, generic, and conclusory allegations that all Defendants "communicated . . . over interstate wires and/or the mail" about the purchase, delivery, configuration, maintenance and repair, design, and payments of WOF games. (*See* SAC ¶¶ 115–20.) Beyond "threadbare recitals of a cause of action," the SAC contains none of the required specificity about how any of these general references to basic business interactions support Plaintiffs' claims of mail or wire fraud. *Eclectic Props.*, 751 F.3d at 998 (analyzing RICO claim after "removing conclusory statements of law from the complaint"); *Lambert*, 2026 WL 1363070, at *7 ("The [FAC] . . . identifies broad documents and episodes, characterizes them as fraudulent or coercive, and asks the Court to infer a racketeering scheme from Defendants' participation . . . .").

Without plausible predicate acts committed by Defendants in furtherance of their fraudulent scheme, Plaintiffs' RICO claim should be dismissed. *See Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (finding Rule 9(b) requires a plaintiff to identify "the who, what, when, where, and how of the misconduct charged" as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false" (citation modified)); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (affirming dismissal under Rule 9(b) because complaint contained "no specific misrepresentations in any of the communications Plaintiffs referenced, no connection between the alleged misrepresentations and any particular acts . . . and no allegations as to how Defendants agreed to engage in an illegal scheme").

        iv.    Plaintiffs still fail to plead a viable claim under Section 1962(a).

Plaintiffs' claims under Sections 1962(a) are similarly deficient. To state a claim under the seldom–used Section 1962(a), a plaintiff must allege an injury proximately caused by the reinvestment of allegedly ill-gotten gains into defendant's business—not just an injury caused by

the alleged predicate acts. *Nugget Hydroelectric L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). As this Court recognized, Plaintiffs are required "to allege 'an investment injury separate and distinct from the injury flowing from the predicate act.'" (ECF No. 54 at 11:14–16 (quoting *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008)).) Importantly, "[r]einvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." (*Id.* at 12:1–3 (citation modified).) In other words, Plaintiffs must show that they were harmed not by the alleged mail or wire fraud used to further Defendants' alleged fraudulent scheme, but instead by each Defendant independently investing the alleged proceeds of the alleged wrongdoing. (*See id.*)

In its prior order, this Court held that Plaintiffs failed to allege proximate causation because "Plaintiffs conclusory allegations do not include sufficient, specific facts causing the reasonable inference that Plaintiffs were actually harmed by the use of investment of racketeering income." (*Id.* at 12:3–5.) Yet again, however, Plaintiffs do nothing to rectify this error. Instead, Plaintiffs continue to assert broad and conclusory injury allegations. (SAC ¶ 203 (alleging that Plaintiffs' injuries consisted of "expenditure and loss of their money to play [WOF] devices"); *see also id.* (alleging generally that Plaintiffs suffered "incremental losses beyond those attributable to any initial interaction with the [WOF] devices," which occurred from Defendants "using and reinvesting racketeering proceeds—including pooled revenues derived from interconnected [WAP] systems"); *id.* (making the conclusory allegations that the alleged reinvestment allowed Defendants to "expand[], intensif[y], and prolong[] their deceptive scheme through the development of new and more immersive gaming devices").) These allegations are nothing more than assertions that Defendants reinvested "proceeds from alleged racketeering activity back into the enterprise to continue [their] racketeering." *Sybersound Recs., Inc.*, 517 F.3d at 1149.[5]

In addition to being conclusory, Plaintiffs' injury allegations are also implausible on their face. Specifically, Plaintiffs claim that they were injured when Defendants reinvested their

---

[5] Plaintiffs' continued reliance on impermissible group pleading throughout this section of the SAC provides an independent basis for dismissal. *See supra* Section III(B)(ii).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

proceeds to develop "new and more immersive gaming devices," like the new "[WOF] Trio" game. (SAC ¶¶ 125–27, 137, 203.) Yet as Plaintiffs themselves admit, the WOF Trio was released in 2025. (*Id.* ¶ 125.) Given that this action was filed on November 21, 2024, (ECF No. 1), Plaintiffs could not have been harmed by the WOF Trio when they were already aware of the alleged RICO scheme at that time. Simply put, Plaintiffs' allegations regarding the WOF Trio cannot show injury, causation, or reliance. *Poulos*, 2002 WL 1991180, at *6 ("Had Ms. McElmore continued to regularly play electronic slot machines . . . after filing the present action, the Court might be concerned about her ability to demonstrate reliance, a key element in a RICO claim.").

v.    Plaintiffs fail to plead a claim under Section 1962(d).

Because Plaintiffs fail to plead a substantive RICO violation under Sections 1962(a) or (c), their Section 1962(d) claim also fails. As this Court has explained, a claim under Section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient. (ECF No. 54 at 12:8–16); *see also Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Absent a properly pleaded substantive RICO violation under Sections 1962(a) or (c), Plaintiffs cannot maintain a claim under Section 1962(d).

### 2. Plaintiffs Still Fail to State Claims for Fraud and Negligent Misrepresentation (Counts IV & VI)

To plead a claim for fraud under Nevada law, a plaintiff must allege sufficient facts that: (1) the defendant made a false representation; (2) the defendant knew or believed that the representation was false or had an insufficient basis for making the representation; (3) the defendant intended to induce plaintiff to act or refrain from acting upon misrepresentation; (4) the plaintiff justifiably relied upon defendant's misrepresentation; and (5) the plaintiff sustained damages as a result. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998); (ECF No. 54 at 13:7–14.) To state a claim for negligent misrepresentation, "a plaintiff must allege that the defendant (1) in the course of its business, profession or employment, or in any other action in which it has a pecuniary interest, (2) supplied false information (3) for the guidance of others in their business transactions and (4) caused pecuniary loss (5) by the plaintiff's justifiable reliance upon the information, (6) if defendant failed to exercise reasonable care or competence in obtaining

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

or communicating the information." (ECF No. 54 at 15:11–18 (citation modified).) As this Court has previously found, a heightened pleading standard applies to claims for both fraud and negligent misrepresentation. (*Id.* at 12:28–13:6; *id.* at 15:18–21.) "To satisfy Rule 9(b), the complaint must include 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" (*Id*. 13:2–6 (citation omitted).)

Just as before, Plaintiffs' allegations fail to state a claim for either cause of action. In dismissing Plaintiffs' FAC, this Court found that Plaintiffs did "not identify with specificity which Defendants made which false representations. . . . Instead, Plaintiffs lump Defendants together and describe their supposedly fraudulent conduct in broad and conclusory terms." (*Id.* at 13:17–20.) The Court also found that the FAC "d[id] not allege which Casino Defendants conveyed fraudulent information, when the information was conveyed, or where." (*Id.* at 15:25–28.) Yet despite this Court's clear guidance, Plaintiffs' SAC continues to improperly "lump" Defendants together. (SAC ¶¶ 251–52, 254–55, 258–62, 273–74, 276–77, 280–86.) Such generalized allegations cannot satisfy the heightened pleading standard of Rule 9. *See DeLeon v. Robinson*, No. 2:23-cv-01452-JAD-NJK, 2024 WL 5056020, at *2 (D. Nev. Dec. 9, 2024) (dismissing fraud claim that alleged only a "recitation of its elements" (citation modified)).

Plaintiffs' failure to plead with particularity is not cured by the handful of statements they quote, none of which amounts to an actionable misrepresentation. While Plaintiffs allege that certain advertisements represented that the game is "fair," "reliable," and governed by "luck," (SAC ¶¶ 52, 84–85, 254, 256, 276–78), such statements are non-actionable puffery. *See Bontly v. Audi of Am., LLC*, No. 2:23-cv-02025-APG-EJY, 2025 WL 1555993, at *3 (D. Nev. June 2, 2025) (representations that a product is "reliable . . . is unactionable puffery under Nevada law."); *see also Last Atlantis Cap. LLC v. AGS Specialist Partners*, 749 F. Supp. 2d 828, 835 (N.D. Ill. 2010) ("The statement [about] . . . 'a fair and orderly market in the securities he trades' is non-actionable puffery."). The same is true with respect to Plaintiffs' allegations that Defendant IGT "emphasized the trust, longevity, and reliability" of the WOF game. (SAC ¶¶ 253, 275); *Portelli v. WWS Acquisition, LLC*, No. 17-cv-2367 DMS (BLM), 2018 WL 9539773, at *3 (S.D. Cal. July

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

18

6, 2018) (promoting "longevity" was "puffery"). Nor is there anything misleading about inviting players to "take a spin." (SAC ¶¶ 84, 254, 276.) As Plaintiffs' own cited materials show, the wheel does, in fact, spin. (*Id.* ¶ 109 (showing a digitally spinning wheel).)

But even assuming any of these statements is actionable, Plaintiffs' claims still fail because the SAC does not plausibly allege reliance. ECF No. 54 at 13, 15 (this Court finding that reliance is a key element of both claims). As explained above, Plaintiffs do not allege which Plaintiffs read any of the alleged misrepresentations, which ones they read, when they read them, or if it was before they played the game. *See supra* Section III(B)(1)(i); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) ("Nor did Kearns specify when he was exposed to them or which ones he found material. Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle."); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing negligent misrepresentation claim because "[n]owhere in the CAC d[id] Plaintiff specify when she was exposed to the statements or which ones she found material to her [purchasing] decisions"). Of course, as noted, Plaintiffs' central misrepresentation theory—that Defendants falsely suggested "equal probability" (SAC ¶¶ 252, 254, 274, 276–77)—fails because the materials Plaintiffs rely on, ***expressly disclose*** that there are unequal odds. *See supra* Section III(A)(1).

Plaintiffs' allegations regarding Defendants' knowledge are similarly deficient. (ECF No. 54 at 13:22–14:8 (finding Plaintiffs failed to allege "false representations by Defendants that were made with knowledge or belief of their falseness.").) While Plaintiffs allege that "executives and business managers prominently placed the [WOF] gaming devices on the floors of their respective casinos," (SAC ¶¶ 259, 281), and received "instructional materials regarding how to program and operate the [WOF] gaming devices," (*id.* ¶ 260), they never allege *who* these "executives and business managers" were or whether they are the same officials who made the alleged misrepresentations. Nor do they allege *when* these acts occurred, *how* putting WOF devices on the casino floors demonstrates Defendants' knowledge, or *what* any such "instructional materials" stated or whether they were distributed before the alleged misrepresentations were made. *City of*

19

*Marysville Gen. Emps. Ret. Sys. v. NightHawk Radiology Holdings, Inc.*, No. 2:09-cv-00659-EJL-CWD, 2011 WL 4584778, at *10 (D. Idaho Sept. 12, 2011) ("Absent the essential factual background outlining the 'who, what, when, where and how' of the events in question, Plaintiff has not established that Mayleben had knowledge at the time that his statements were false or misleading."); *Ortiz v. Deckers Outdoor Corp.*, No. 25-cv-09631-RFL, 2026 WL 1243675, at *2 (N.D. Cal. May 6, 2026) (dismissing fraud claim because the "complaint fails to plausibly allege with particularity that Deckers knew its representations . . . were false").[6]

Finally, Plaintiffs fail to state an actionable misrepresentation claim based on omissions. As this Court recognized, "'[b]efore an omission can constitute negligent misrepresentation, a special relationship must exist between the parties such that the defendant had a duty to speak.'" (ECF No. 54 at 16:8–11 (quoting *Smallman v. MGM Resorts Int'l.*, 638 F. Supp. 3d 1175, 1193 (D. Nev. 2022)).) Further, "a special relationship may exist where one party interposes confidence in the other because of that person's position and the other party knows of this confidence." (*Id.* at 16:11–15 (citation modified).) The same is true with respect to claims of fraud. The Ninth Circuit has held that, "[i]n order for a mere omission to constitute actionable fraud, a plaintiff must first demonstrate that the defendant had a duty to disclose the fact at issue." *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir. 1988), *overruled on other grounds by Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931 (9th Cir. 2001).

Here, Plaintiffs' allegations that Defendants "fail[ed] to disclose," or "conceal[ed]" the "true nature" of the WOF game (*see* SAC ¶¶ 5, 6, 49, 51, 91, 171, 251, 255), are insufficient to state a misrepresentation claim, because as this Court previously held "[t]here is no evidence that Casino Defendants or IGT had a special relationship with Plaintiffs such that disclosure was mandated . . . ." (ECF No. 54 at 16:21–26.) Plaintiffs' conclusory allegation that Defendants "owed a duty to exercise reasonable care in providing accurate information concerning the nature and

---

[6] The same is true of Plaintiffs' citation to IGT's patent. As this Court recognized, "[r]eference to this patent," does not show that Defendants had knowledge that any representations were false, as there is "no evidence that Casino Defendants were aware of the . . . patent." (ECF No. 54 at 14:2–5.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

operation of electronic gaming devices that they operate or manufacture," (SAC ¶ 282) is nothing more than an incorrect assertion of law. This Court should dismiss these claims with prejudice.

### 3. Plaintiffs Still Fail to State a Claim for Unjust Enrichment (Count V)

This Court's prior Order makes clear that, "[t]o state a claim for unjust enrichment under Nevada state law, a plaintiff must show (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit." (ECF No. 54 at 14:16–20 (citation modified).) A Plaintiff must also allege that "there is no adequate remedy at law for their unjust enrichment claim to proceed." (*Id*. at 14:21–23 (citation modified)); *see also Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *2 (9th Cir. Jan. 17, 2024) (finding no viable "claim for retrospective equitable relief" where the "complaint contains no allegations as to why [plaintiff] lacks an adequate remedy at law for her disgorgement and restitution claims"). Further, where a plaintiff's "claim for damages . . . is predicated on the same conduct as his claims for equitable relief, [this] undermines any potential inadequacy of legal remedies." *Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914, 922 (C.D. Cal. 2023); *see also Axelrod v. Lenovo (U.S.) Inc*., No. 21-cv-06770-JSW, 2022 WL 976971, at *3 (N.D. Cal. Mar. 31, 2022) (dismissing claims where plaintiffs did "not differentiate the facts that support their claims" for equitable relief "from the facts that support their other claims.").

In previously dismissing Plaintiffs' unjust enrichment claims, this Court held that Plaintiffs failed "to provide substantive factual allegations explaining why legal remedies will not make them whole and fail to allege facts entitling them to relief." (ECF No. 54 at 14:13–15.) The SAC does nothing to cure this defect. Plaintiffs again offer no facts that would support their conclusory allegation that "legal remedies may be inadequate." (SAC ¶ 271.) This is clearly insufficient under this Circuit's law. *Cross v. Haleon US, Inc*., No. 2:24-cv-09325-MCS-PVC, 2025 WL 2019930, at *5 (C.D. Cal. July 11, 2025) (finding "a plaintiff still must offer allegations toward the inadequacy of legal remedies in support of an equitable claim" (citation omitted)); *Rabin v. Google, LLC*, No. 22-cv-04547-BLF, 2023 WL 4053804, at *13 (N.D. Cal. June 15, 2023) (finding no "facts" to suggest an inadequate remedy at law where plaintiffs requested "restitution" and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

"disgorgement" but failed to explain how "damages would provide an inadequate remedy").

Plaintiffs' attempt to plead their unjust enrichment claim in the alternative does not change this conclusion. (SAC ¶ 271.) Simply pleading unjust enrichment, without any supporting facts, is insufficient. *Rabin*, 2023 WL 4053804, at *13 ("Plaintiffs' sole allegation on this point is a bald assertion that '[t]his cause of action is pled in the alternative.' . . . This is insufficient to plead the claim in the alternative because it contains no facts that would support the alternative pleading.").

Finally, Plaintiffs' unjust enrichment claim also fails because Plaintiffs have not alleged any inequity entitling them to relief. As the Sixth Circuit has explained, "[a]n unjust enrichment claim requires an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Miller v. Sodak Gaming, Inc.*, 93 F. App'x 847, 851 (6th Cir. 2004) (citation modified) (finding plaintiff "suffered no inequity because under the clearly posted rules of the [WOF] game, she was not entitled to a primary progressive jackpot."). Here, Plaintiffs' own materials demonstrate that they were aware that the wheel's segments are subject to unequal odds. *See supra* Section III(A)(1). Accordingly, Plaintiffs' unjust enrichment claims should also be dismissed.

### 4. The Court Should Dismiss Plaintiffs' New Claims (Counts Seven – Ten)

#### i. Plaintiffs' new claims fail as a matter of law.

After this Court dismissed the FAC, Plaintiffs added four new causes of action to this case. None of these claims is legally viable.[7]

***First***, Plaintiffs' claims fail as a matter of law because the Michigan CPA, Rhode Island UTPA, and Nevada DTPA do not apply to conduct that is in compliance with the rules of a state agency. Indeed, each statute expressly carves out regulated conduct from its reach. MCL § 445.904(1)(a) (exempting "[a] transaction or conduct specifically authorized under laws administered by a regulatory board"); R.I. § 6–13.1–4(a) (exempting "actions or transactions permitted under laws administered by the department of business regulation or other regulatory body"); NRS § 598.0955 (1)(a) (exempting "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state or local governmental agency").

---

[7] Because Plaintiffs added these new claims to the SAC without leave of Court, Defendants are contemporaneously filing a motion to strike.

22

This carveout has been expressly applied in the context of advertising in relation to slot machines. *Kraft v. Detroit Ent., L.L.C.*, 261 Mich. App. 534, 541–42 (2004) ("[W]e conclude that the general conduct involved in this case—the operation of slot machines—is regulated and was specifically authorized by the MGCB. . . . Therefore, . . . defendants are exempt from plaintiff's MCPA claims."); *see also* Nev. Gam. R. 14.030 ("A manufacturer or distributor shall not distribute a gaming device in Nevada . . . unless it has received a recommendation for approval from the Board . . . ."). Defendants are therefore exempt from any such claims under these statutes.

*__Second__*, all four of Plaintiffs' new claims fail as a matter of law because all four statutes apply only to transactions involving "goods" or "services." *See e.g.*, *Gage v. Cox Commc'ns, Inc.*, No. 2:16-cv-02708-KJD-GWF, 2017 WL 1536219, at *2 (D. Nev. Apr. 27, 2017) ("[T]he entirety of Section § 598 only applies to transactions involving goods and services."); *Laccinole v. Students For Life Action Inc.*, No. 21-252 WES, 2022 WL 3099211, at *4 (D.R.I. Aug. 4, 2022) (finding plaintiff failed to allege that he "'purchased goods or services'"); *Miller v. Wells Fargo Bank*, No. KC-11-0060, 2015 WL 1515942, at *7 (R.I. Super. Mar. 30, 2015) (agreeing that a "loan does not fall within the category of goods and services"); *DIRECTV, Inc. v. Shouldice*, No. 5:03-CV-62, 2003 WL 23200255, at *4 (W.D. Mich. Oct. 20, 2003) (finding defendant's "acts" must have occurred in conjunction with the "sale or lease of goods or services").

This goods-or-services limitation has been applied specifically to gambling-related claims. As the Eastern District of California explained, "[g]ambling is not work or labor, nor is it related to the sale or repair of any tangible chattel." *Brill v. Postle*, No. 2:19-cv-02027 WBS AC, 2020 WL 2936688, at *5 (E.D. Cal. June 3, 2020) (citation modified); *Diep v. Liberty Media Corp.*, No. 2:23-cv-02124-GMN-NJK, 2025 WL 562653, at *5 (D. Nev. Feb. 19, 2025) (holding that a sporting ticket is not a good or service). Here, Plaintiffs' claims all allege that Defendants fraudulently induced them into gambling on the WOF game. (SAC ¶¶ 5, 9, 52, 54–55, 108, 123, 138, 243, 247–48, 251.) But gambling is not "good" or "service" within these statutes. The claims fail for this reason as well.

*__Finally__*, Plaintiffs' CLRA claim fails as a matter of law because Plaintiffs failed to provide

23

Defendants with the requisite pre-suit notice. *See* Cal. Civ. Code § 1782(a)(1)–(2). Specifically, "[t]he CLRA requires that at least 30 days before filing a CLRA action, a plaintiff must notify the person alleged to have violated Section 1770 of the particular violations alleged, and also demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation." *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1149–50 (C.D. Cal. 2021). Plaintiffs failed to provide this pre-suit notice and did not even attempt to allege that they did. For this additional reason, Plaintiffs' CLRA claim fails as a matter of law.

ii. Plaintiffs fail to plead the new claims with particularity.

Additionally, Plaintiffs' new claims also suffer from the same pleading defects that doom their other claims. Specifically, the SAC fails to meet the heightened pleading standard of Rule 9. *See supra* Sections III(B)(1)&(2); *see also Kearns*, 567 F.3d at 1125 (finding "Rule 9(b)'s particularity requirement" applies to the CLRA); *Goodsell v. Tchrs. Health Tr.*, No. 2:23-cv-01510-APG-DJA, 2024 WL 2786386, at *4–5 (D. Nev. May 29, 2024) (finding NDTPA claim must be pled with particularity); *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 612–13 (E.D. Mich. 2015) (finding MCPA "claim does not satisfy Rule 9(b)").

Additionally, as discussed above, Plaintiffs fail to plead facts showing any reliance. *See Kearns*, 567 F.3d at 1126 (finding plaintiff did not "specify when he was exposed to th[e] [ads] or which ones he found material" and "failed to specify which sales material he relied upon in making his decision"); *Gaming v. Trustwave Holdings, Inc.*, No. 2:15-cv-02464-GMN-PAL, 2016 WL 5799300, at *7 (D. Nev. Sept. 30, 2016) (finding plaintiff must allege he "relied on the alleged misrepresentation"); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1135 (S.D. Cal. 2021) ("A plaintiff . . . must allege actual reliance."); *Shain v. Advanced Techs. Grp., LLC*, No. 16-10367, 2017 WL 768929, at *11 (E.D. Mich. Feb. 28, 2017) (explaining a plaintiff "must show reliance"); *Smith v. Davol Inc.*, No. PC-08-8307, 2016 WL 7041131, at *7 (R.I. Super. Nov. 28, 2016) (analyzing reliance). Plaintiffs' claims should be dismissed with prejudice.

## IV.   CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' SAC *with prejudice*.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

24

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

DATED: June 2, 2026

Respectfully submitted,

/s/ *Paul G. Karlsgodt*
DAVID A. CARROLL (NSB #7643)
Email: dcarroll@rrsc-law.com
ANTHONY J. DIRAIMONDO (NSB #10875)
Email: adiraimondo@rrsc-law.com
ROBERT E. OPDYKE (NSB #12841)
Email: ropdyke@rrsc-law.com
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099

*Attorneys for Defendants IGT, MGM Grand Detroit, LLC, Blue Tarp reDevelopment, LLC, UTGR, LLC, NP Palace LLC, Coast Hotels and Casinos, Inc., and The Cannery Hotel and Casino, LLC*

PAUL G. KARLSGODT  (*Pro hac vice*)
Email: pkarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California St., Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600

*Attorney for Defendant IGT*

25

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed via this Court's CM/ECF system, which system will cause the forgoing to be electronically served upon the following:

David C. O'Mara
THE O'MARA LAW FIRM, P.C.
311 E. Liberty St
Reno, NV  89501
775.323.1321
david@omaralaw.net

E. Powell Miller, *pro hac vice*
Gregory A. Mitchell, pro hac vice
THE MILLER LAW FIRM
950 W. University Drive, Suite 300
Rochester, MI  48307
248.841.2200
epm@millerlawpc.com

Frank S. Hedin, *pro hac vice*
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, FL  33131
305.357.2107
fhedin@hedinllp.com

Tyler K. Somes, *pro hac vice*
HEDIN LLP
1100 15th Street NW, Suite 04-108
Washington, DC  20005
202.900.3331
tsomes@hedinllp.com

Dated: June 2, 2026

*/s/ Paul G. Karlsgodt*
Paul G. Karlsgodt

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER